## HODGE v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.
June 11, 1926.)

No. 4287.

1. **Criminal law** ⟐753(2).

In considering motion to direct verdict, evidence must be viewed most favorably to party against whom direction is asked.

2. **Criminal law** ⟐1159(2).

Circuit Court of Appeals cannot weigh testimony or credibility of witnesses.

3. **Poisons** ⟐9.

Evidence *held* sufficient for jury in prosecution under Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), as to whether defendant's action in dispensing narcotic was that of physician in course of professional practice.

4. **Poisons** ⟐9.

In prosecution under Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), evidence *held* sufficient for jury on question of entrapment.

5. **Criminal law** ⟐377.

In prosecution under Harrison Anti-Narcotic Act, § 2 (Comp. St. § 6287h), refusal to permit testimony as evidence of good character that defendant was honorably discharged from army *held* proper.

6. **Criminal law** ⟐1064(1).

In absence of exception, request that court rule on objections interposed, ₀or request for instruction to jury to disregard, defendant is not entitled to review of action of district attorney in seeking to prove admission of guilt.

7. **Criminal law** ⟐478(1)—Witness held qualified to testify to relative strength of morphine and heroin, and to effect that heroin is habit-forming drug.

Witness, after stating he had been narcotic inspector, had read books on narcotics and their effect, and knew relative strength of drugs, *held* properly qualified to testify to relative strength of morphine and heroin, and dose for normal person, and to effect that heroin is habit-forming drug.

8. **Criminal law** ⟐481.

Generally qualification of expert is in first instance for court and its weight for jury, and court's discretion in connection with question of qualification will not be overruled, unless manifestly erroneous.

9. **Criminal law** ⟐556—Government was not bound by statements in defendant's record book of narcotic sales introduced by district attorney on cross-examination, after defendant testified on direct examination as to date of alleged sale according to his records.

Where district attorney introduced defendant's record book of drug sales, on cross-examination of defendant, after defendant had testified as to date of transaction in accordance with his records, government was not bound by statements from such records, or defendant's testimony with respect thereto, so as to preclude argument that records were fabricated.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Dr. O. W. Hodge was convicted of violation of the Harrison Anti-Narcotic Act, and he brings error. Affirmed.

Chas. M. Bryan, of Memphis, Tenn. (Arthur G. Brode, of Memphis, Tenn., on the brief), for plaintiff in error.

S. E. Murray, U. S. Atty., of Memphis, Tenn. (W. H. Fisher, Asst. U. S. Atty., of Memphis, Tenn., and A. A. Hornsby, Asst. U. S. Atty., of St. Petersburg, Fla., on the brief), for the United States.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error, a physician, was charged with violating the Harrison Anti-Narcotic Act [1] by selling to one McGrath, who was in fact a narcotic inspector, on each of two days in June, a quantity of heroin, an opium derivative, otherwise than in pursuance of an order from the vendee, and otherwise than in the course of practice as a physician; the vendee not being then and there a patient of defendant. There was conviction on both counts. The assignments of error relied on relate to the refusal to direct verdict for defendant, the admission and rejection of testimony, and the argument of the district attorney to the jury. [1-3] 1. The motion to direct verdict was on the grounds (a) that defendant's action in dispensing the narcotic was that of a physician in the course of his professional practice; and (b) that the sales made were induced by the government under circumstances constituting entrapment. In considering the motion to direct verdict, we must take the view of the evidence most favorable to the party against whom direction is asked; and if there is here substantial testimony which, if believed, would warrant conviction, the motion must be overruled. We cannot weigh the testimony or determine the credibility of witnesses.[2] Upon both propositions urged by plaintiff in error the testimony was in sharp conflict.

As to whether the transactions amounted to a prohibited sale or to a permissible dis

---

[1] Act Dec. 17, 1914, c. 1, § 2 (Comp. St. § 6287h).

[2] Rochford v. Pennsylvania Co. (C. C. A. 6) 174 F. 81, 83-84, 98 C. C. A. 105; Burton v. United States, 202 U. S. 373, 26 S. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 362; Kelly v. United States (C. C. A. 6) 258 F. 392, 169 C. C. A. 408.

pensing: The inspector testified that on the first occasion he took with him one Hirshey, an addict, who introduced the witness to the defendant as his (the addict's) "buddy," the addict doing most of the talking; that the inspector told defendant he himself was an addict, and asked if the doctor could get him some morphine; that the latter said he could, and that the price would be $5 a dram, to which the inspector agreed, then asking defendant if he could get the witness a bottle of cocaine, which the defendant said he could get for $8; that the legitimate price of morphine at the time was $1.50 per dram bottle on order form; that no physical examination of the witness was made; that the inspector paid defendant $13 down for the morphine and cocaine, which defendant agreed to deliver a few hours later at a designated park; that the delivery (which was somewhat delayed through apparent misunderstanding as to the identity of the park) was made at a park in the presence of the addict, but was of heroin, instead of morphine and cocaine, which defendant said he was unable to get; that the inspector made no representations, other than that he was an addict, although there was some talk about his being about to leave town, and wanting the morphine at the time he "was supposed to be leaving town"; that the second purchase was six days later, when the addict was not present; that on this occasion the inspector called for "some more stuff, or some more heroin," for two bottles of which he agreed to pay $25, paying $20 down and $5 on the evening of that day, when the delivery was made at defendant's office, through fear of being disturbed by the police in the park. There was testimony of another inspector tending to corroborate the alleged delivery of the second purchase. If the government's testimony was believed, the transaction amounted to a prohibited sale of narcotics. Jin Fuey Moy v. United States, 254 U. S. 189, 41 S. Ct. 98, 65 L. Ed. 214; Loewenthal v. United States (C. C. A. 6) 274 F. 563, 565.

The defendant, while admitting the furnishing of heroin on two occasions in June to the inspector, whose name he understood as Bancroft, testified in detail to dispensing it as a physician in good faith, to relieve severe rheumatic pain from which the inspector claimed to be suffering, and denied having previously met the addict referred to. There were many substantial differences between the versions of the inspector and of the defendant. It is enough to say that, if defendant were believed, he was entitled to acquit-

tal. The jury evidently did not believe him.[3] He was plainly not entitled to verdict on the first ground stated.

[4] We think the same conclusion must result as to the second ground. The inspector testified that "on or about June 5th, the office had received information that Dr. Hodge had been selling narcotics," and that the witness formed the acquaintance of Hirshy, on the next day, and went with the latter to defendant's office, and that the business of the witness was "not to persuade—but to see if I could purchase narcotics." This, in connection with the testimony of the witness as to the taking of the addict with him, the latter's connection with the first purchase, and the first delivery thereunder, had a substantial tendency to show the inspector's good faith. If the inspector's testimony is believed, and his good faith accepted, there was no forbidden entrapment. Billingsley v. United States (C. C. A. 6) 274 F. 86, 89; Fisk v. United States (C. C. A. 6) 279 F. 12, 15-18;[4] Browne v. United States (C. C. A. 6) 290 F. 870, 873-874. And compare the decoy cases of Goldman v. United States (C. C. A. 6) 220 F. 57, 62, 135 C. C. A. 625, and Roth v. United States (C. C. A. 6) 294 F. 475, 477. We think neither Cermak v. United States (C. C. A. 6) 4 F.(2d) 99, nor any of the decisions of this court relied on by defendant, contain anything inconsistent with this view. The motion to direct verdict was properly overruled.

---

[3] The contention of the defendant that the uncontradicted evidence was that the defendant had given the drug to the government inspector for the purpose of treating him for rheumatism, to relieve his pain as a sufferer from that disease, is not sustained by the record. The inspector's testimony has already been in part referred to. True, on cross-examination he replied, "I don't remember," or "I don't remember that," or "I don't remember saying that," to questions whether he did not make certain statements to defendant regarding his inability to get medicine where he was going, and an alleged statement that he was suffering from rheumatism, and that the morphine was the only thing that would do him any good, and that he was going to another city to take mud baths. But the answers just referred to were for the jury's consideration, in connection with the previous testimony of the witness already referred to, and his later denial on cross-examination of making some of the statements, to which the answer of failing to remember had been so given.

[4] "This information, upon which is based the belief of the officers as to the guilt of the defendant, may be and usually is of a character wholly insufficient to convict the defendant of any specific offense. If it were sufficient for that purpose, then recourse to entrapment would be useless and inexcusable."

[5] 2. There was no error in refusing to permit defendant to give testimony—as evidence of good character—that he was honorably discharged from the army    People v. Garbutt, 17 Mich. 9, 15.[5]

3. On his cross-examination, and without objection by him or his counsel, defendant answered in the negative a question whether when arraigned he did not plead guilty. In the course of further questions in the same direction, which were objected to by defendant's counsel, the district attorney, in response to an inquiry by opposing counsel whether he was seeking to prove an admission of guilt, said, "Yes, sir; I want to prove he entered a plea of guilty on solemn arraignment." Following an objection that such proof would not be competent for any purpose, and the court's remark, "He said he did not," defendant said, "I can tell you what happened, if you want me to." He then admitted, in reply to questions of the district attorney, that counsel other than the one appearing on the trial had represented him at the time of arraignment. The district attorney continued his questions (interrupted by objections), "And after you entered your plea of guilty" (objection to the form of the question), "After you were here on that occasion, and when you found you could not be relieved from the payment of a fine" (objection), "When you learned through your friends that a fine would not be recommended, then you wanted to withdraw your plea" (objection and remark by court, "Let us not go into that"), "Didn't you negotiate and have your friends to see if a recommendation would not be made for a fine against you and not a prison sentence?" (objected to). This question was answered in the negative, without ruling upon the objection being made or asked; the court thereupon stating, "I doubt if that would be competent," the subject was dropped and not again resumed.

[6] We do not interpret the record as meaning as defendant contends, that, "after the defendant had denied the entering of a plea of guilty, the district attorney told the jury that such a plea had been entered," or that the district attorney's action went further than "seeking to prove," in the language of defendant's counsel, "an admission of guilt," and we find in the record nothing impugning the good faith of the district attorney in seeking to secure the admission in question. We think it not clearly improper to show the fact, if it was such, that defendant, when first arraigned, pleaded guilty, and subsequently changed his plea for the reason suggested in the question of the district attorney. The fact that defendant was in custody does not necessarily make the admission incompetent. Bilokumsky v. Tod, 263 U. S. 149, 157, 44 S. Ct. 54, 68 L. Ed. 221, and cases cited in note, including Pierce v. United States, 160 U. S. 355, 357, 16 S. Ct. 321, 40 L. Ed. 454; Wilson v. United States, 162 U. S. 613, 615–16, 16 S. Ct. 895, 40 L. Ed. 1090; Hardy v. United States, 186 U. S. 224, 228–230, 22 S. Ct. 889, 46 L. Ed. 1137. Cf. Powers v. United States, 223 U. S. 303, 32 S. Ct. 281, 56 L. Ed. 448. It is difficult to recognize a substantial basis for a distinction between an admission on arraignment in the trial court and such admission before an examining magistrate, as in the Wilson and Hardy Cases, supra.[6] However, we find it unnecessary to decide the question of law involved, for the reason that throughout the entire episode no exception was taken by defendant's counsel to the court's action or nonaction, nor indeed any formal request to rule upon objections, nor any request for instruction to the jury to disregard the examination by the district attorney.

In the absence of exception, defendant is not entitled of right to review of the action now complained of. Allis v. United States, 155 U. S. 117, 122, 15 S. Ct. 36, 39 L. Ed. 91; Robilio v. United States (C. C. A. 6) 291 F. 975, 980, 981. In view of the judge's com-

---

[5] In sustaining the exclusion on a trial for murder of evidence offered by defendant that, while in the army from 1862 to 1865, he was reputed to be a good and valiant soldier, Chief Justice Cooley said (page 15): "It is somewhat difficult to suggest any plausible reason in favor of the admission of such evidence, and it was clearly irrelevant." Nor, in view of the offer of proof referred to was it error to say in the charge: "You are not trying this man, gentlemen, on his war record—that is over." Indeed, this statement was not even excepted to.

[6] While the decisions of the state courts are not uniform, there is creditable authority that a plea of guilty, although subsequently withdrawn with the permission of the court and replaced by a plea of not guilty, may nevertheless be given in evidence by the state upon the trial of the case to the jury, not as a judicial confession, which dispenses with further proof of the corpus delicti, but merely as a fact or circumstance at variance with the claim of innocence, upon the truth of which the jury are to pass. State v. Carta, 90 Conn. 79, 96 A. 411, L. R. A. 1916E, 634; People v. Jacobs, 165 App. Div. 721, 151 N. Y. S. 522. And it has been held that a voluntary offer by the accused before trial to plead guilty on terms to the offense charged is competent as his admission. 16 C. J. § 1254; Com. v. Callahan, 108 Mass. 421. Compare Kirk v. State, 56 Tex. Cr. R. 429, 120 S. W. 436.

ments, it would seem likely that he would have more promptly ended the inquiry, had exceptions been taken, or had rulings on the objections been pointedly called for. We think the case does not call for a disregard of the requirement of exception.

[7, 8] 4. There was no error in overruling the objection—on the ground of lack of qualification—to the testimony of the witness Frazier to the relative strength of morphine and heroin, and the dose for a normal person, not an addict, but for treatment of disease, and to the effect that heroin is a habit forming drug. By way of qualification the witness stated he had been a narcotic inspector since 1919, had read books on narcotics and their effect on the human system, that he knew the relative strength of morphine, heroin, and drugs of that kind, had made qualitative analyses of narcotics to determine whether morphine, heroin, or other kinds, and that he had known "hundreds of heroin fiends." This was evidence of at least a substantial degree of competency. Generally stated, the qualification of an expert is in the first instance· for the court; its weight, for the jury. The court's discretion in connection with the preliminary question of qualification will not be overruled, unless the ruling is manifestly erroneous. Spring Co. v. Edgar, 99 U. S. 645, 658, 25 L. Ed. 487; Clark v. United States (C. C. A. 5) 293 F. 301, 305. And compare Albert v. United States (C. C. A. 6) 281 F. 511, 513.

[9] 5. Against objection, the district attorney was permitted to argue to the jury that defendant's record of the transactions in question—purporting to be made of a sale on June 8th, while the inspector says the dates of the respective sales were June 6th and June 12th—was made after the fact, and by way of fabricating a defense, and the court refused to charge that the government was bound by defendant's statements and cannot contradict him in regard to the making of the records because, as alleged, the matter was first developed on cross-examination.

We need not consider what the rule would be under certain states of fact, for it is clear that the assumption relied upon by defendant is erroneous. On direct examination, in detailing the first transaction, defendant referred to the transaction as occurring "on the 8th day of June, * * * that is the date I have, and I think I can back it up by consulting my records when I go back to the office"; and in reply to his counsel's inquiry, why he asked the inspector for his name, said, "I have to make a record, if I let any one

have any narcotics, because that is the rule—that is the government law." Asked on re-cross-examination when he made his report—what day in June—he said, "I don't know—I have a duplicate in my office—I can get it." A little later, on being recalled by the government "for an omitted question," he produced, at the latter's request, a record which he said was the only record he had of the dispensing of the three bottles of medicine to McGrath, and that it was part of his system. In response to a question by the district attorney, he said he "did not mind introducing it," and the district attorney said, "They may be considered as read—introduced by the government." It is plain to our minds that the government is not bound by the statements in that record.

We find nothing in the motion for new trial calling for discussion. It is, of course, possible that defendant is innocent of the offense for which he has been convicted, but we have no reason to think he has been denied a fair trial.

The judgment of the District Court is affirmed.