## CARTER v. STATE OF TENNESSEE.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1927.

No. 4764.

1. **Criminal law** ☞1086(14)—**Abusive epithets of prosecuting attorney held not ground for reversal in homicide case, absent showing of court's action thereon and timely exception.**

In prosecution for murder, alleged misconduct of prosecuting attorney in referring to defendant as "convict," "thief," and "murderer" *held* not ground for reversal, where record did not show court's action with reference thereto, or that timely exception was taken.

2. **Criminal law** ☞1086(14)—**Ordinarily objections not timely made and exhibited by record will not be considered, unless miscarriage of justice is shown.**

Ordinarily a court of review will not consider objections not made during trial and exhibited by record, unless in criminal case it appears from whole record that error complained of, but to which no objections were made or exceptions taken, clearly caused a miscarriage of justice.

3. **Criminal law** ☞1144(10)—**Failure of court to perform duty in reprimanding counsel for use of abusive epithets and admonishing jury cannot be assumed.**

In criminal case it cannot be assumed, in the absence of a proper showing, that the court did not perform its duty in reprimanding counsel for use of abusive epithets. and admonishing jury relative thereto.

4. **Criminal law** ☞730(1)—**Improper argument is not reversible error, where jury is explicitly instructed to disregard it.**

The general rule is that improper argument of prosecutor is not ground for reversal, where the jury is explicitly directed to disregard it.

5. **Criminal law** ☞1044—**Possible prejudice from improper argument remaining, notwithstanding reprimand and instruction to disregard, is waived by failure to move for mistrial.**

Where record discloses or necessarily implies reprimand of counsel and instruction to jury to disregard improper argument, any prejudice remaining is waived by failure of defendant to move for mistrial.

**6. Homicide ☞268—Evidence held for jury in prosecution for murder alleged to have been committed by defendant and United States deputy marshal in making arrest.**

Evidence showing homicide alleged to have been committed by defendant and United States deputy marshal in the course of making an arrest *held* sufficient to go to jury in prosecution for murder.

**7. Criminal law ☞1144(13)—Appellate court, considering motion for directed verdict, will not weigh evidence, but consider only whether there is lacking evidence on necessary element.**

It is not the province of the Circuit Court of Appeals to weigh evidence in considering motion for directed verdict, but only to determine whether it is legally sufficient to go to jury; it being insufficient only when there is lacking substantial evidence on a necessary element of the case.

**8. Criminal law ☞877—Conviction for voluntary manslaughter held not inconsistent with acquittal of codefendant, deputy United States marshal, though both asserted self-defense.**

In prosecution of posseman and deputy United States marshal for murder committed in making arrest, where defense of both defendants was self-defense, verdict acquitting deputy marshal and convicting defendant posseman of voluntary manslaughter *held* not inconsistent, on theory that self-defense, if sustained as to deputy marshal must likewise have been sustained as to defendant, in view of facts showing that defendant may have been actuated by unlawful motives not known to deputy marshal.

**9. Criminal law ☞371(4, 12)—In murder prosecution of posseman and deputy marshal, evidence that posseman and others had robbed deceased of liquor while impersonating officers, held admissible on motive and intent.**

In prosecution of posseman and deputy United States marshal for murder while attempting an arrest, admission of evidence that defendant posseman and certain others, two weeks before the killing, had robbed deceased of whisky while impersonating federal officers, for the purpose of showing criminal intent and improper motive on the part of such defendant, *held* not erroneous, as tending only to prejudice the minds of the jurors, or as compelling defendant to give evidence on another charge of impersonating officer, or denying him protection against self-incrimination.

**10. Criminal law ☞576(8)—Delay until October, 1923, in trial of indictment returned at August term, 1920, held not ground for discharge, no demand being made.**

Delay until October, 1923, in trial of indictment for murder returned at August term, 1920, *held* not to entitle defendant to discharge on ground that he had been denied a speedy trial, where during delay defendant was in penitentiary serving sentence on another charge, and made no motion for an earlier trial.

**11. Removal of causes ☞115—Where prosecution of deputy United States marshal and posseman for murder was removed, federal court was not required to follow state procedure in matter of sequestering jury, allow-** ing opening statements, and giving instructions (Judicial Code, § 33 [Comp. St. § 1015]; Comp. St. § 1537).

Where prosecution of deputy United States marshal and posseman for murder committed while making arrest was removed to federal court under Judicial Code, § 33 (Comp. St. § 1015), failure of federal court to follow state practice in the matter of sequestering jury, allowing counsel to make opening statements, and instructing jury *held* not error; the Conformity Act (Comp. St. § 1537) if applicable to a criminal prosecution by analogy, being applicable only to the manner in which parties bring the case to issue and trial, or to substantive rights, and not to the manner in which the judge performs his duties.

**12. Removal of causes ☞22—Prosecution of deputy United States marshal and posseman for murder held properly removed to federal court (Judicial Code, § 33 [Comp. St. § 1015]).**

Prosecution of deputy United States marshal and posseman for murder *held* properly removed to federal court for trial, under Judicial Code, § 33 (Comp. St. § 1015).

**13. Removal of causes ☞115—Refusal of district attorney to represent posseman, prosecuted with deputy United States marshal for murder, and refusal of court to so require, held not error (Judicial Code, § 33 [Comp. St. § 1015]).**

In prosecution of deputy United States marshal and posseman for murder in making arrest, refusal of district attorney to represent posseman, and refusal of court to require him to do so, *held* not to constitute an element of discrimination prejudicial to him, notwithstanding removal of case to federal court was warranted under Judicial Code, § 33 (Comp. St. § 1015).

**14. Criminal law ☞1218—Sentence of one convicted in federal court of violation of state statute to federal penitentiary held erroneous (Judicial Code, § 33 [Comp. St. § 1015]).**

Where prosecution of deputy United States marshal and posseman for murder in making arrest was removed to federal court under Judicial Code, § 33 (Comp. St. § 1015), sentence of posseman there convicted to imprisonment under state statute in federal penitentiary *held* improper.

In Error to the District Court of the United States for the Middle District of Tennessee; John J. Gore, Judge.

Henry T. Carter was convicted of voluntary manslaughter, and he brings error. Reversed and remanded for resentence.

John E. Garner, of Springfield, Tenn., for plaintiff in error.

Ferriss C. Bailey, of Nashville, Tenn. (L. D. Smith, Atty. Gen. of Tennessee, on the brief), for the State of Tennessee.

Before DENISON and MOORMAN, Circuit Judges, and HICKENLOOPER, District Judge.

HICKENLOOPER, District Judge. On August 12, 1920, the plaintiff in error, Henry T. Carter, accompanied by one G. C. Vestal, a United States deputy marshal for the Middle district of Tennessee, went to the home of L. G. Wynne, in Wilson county, in said state and district, some 18 or 20 miles from the city of Nashville. Vestal and Carter left Nashville some time between 9:30 and 10 o'clock in the evening, and arrived at the home of L. G. Wynne about or shortly prior to midnight. Upon this journey Vestal carried a warrant for the arrest of one A. J. Morris, a fugitive from justice, and it was contended by Vestal and Carter, and there is no direct evidence to the contrary, that prior to leaving Carter was unwillingly impressed into service as a posseman to assist the deputy marshal in making an arrest of Morris, who the deputy marshal had been advised was in hiding at the residence of Wynne.

Upon arrival at Wynne's residence Vestal knocked upon the door leading into Wynne's bedroom and some conversation took place, followed shortly thereafter by shots fired by Vestal and Carter through the door of the bedroom, one of which shots struck Wynne and caused his death. It is also conceded that a shotgun was fired at least once from the interior of the bedroom, and that the pellets of the charge passed through a carpet weather strip at the base of the door, slightly wounding Carter; but the evidence is in conflict, both as to whether other shots were fired, from rifle or revolver, from the interior of the room, and as to whether the shotgun was discharged before or after the revolver shot which caused the death of Wynne.

At the August term, 1920, of the circuit court of Wilson county, Tennessee, at the instance of M. C. Wynne, prosecutor and a brother of the deceased, the grand jury returned an indictment in two counts against G. C. Vestal, Henry Carter, and one Will Atkinson, charging murder in the first degree in the first count and a conspiracy to murder Wynne in the second count. Upon the petition of Vestal as a deputy marshal and Carter as an alleged posseman acting under the directions and in the assistance of said deputy marshal, the cause was removed to the United States District Court for the Middle District of Tennessee for trial. Verdicts of not guilty were returned as to Vestal and Atkinson, and the jury found Carter "guilty in the manner and form as charged in the indictment of voluntary manslaughter." Motion for a new trial was overruled, and the court sentenced plaintiff in error to an indeterminate imprisonment in the United States penitentiary at Atlanta,

Ga., for a term of not less than two nor more than ten years. Error is prosecuted to this judgment.

The evidence disclosed without dispute that approximately two weeks before the shooting in question the plaintiff in error, the defendant Atkinson, one O. D. Ryan, and one Robert Malone went to the residence of L. G. Wynne, and under guise of enforcing the prohibition laws robbed him of most, if not all, of certain whisky possessed by him. The evidence also discloses that, prior to the shooting in question, Vestal and Carter stopped at the residence of Will Atkinson, a short distance from that of L. G. Wynne, and inquired the way to the latter's residence. Atkinson misdirected them to the residence of Robert Waters. At both of these places Vestal stated his name and the position he occupied, although there is some dispute whether he stated to Waters that he was intending to effect the arrest of Wynne or Morris. After the shooting, Vestal and Carter left the premises and returned to their automobile, and at some time after midnight they stopped at the residence of Charles Seay, wakened him, and asked to use his telephone. There was conflict as to the name Vestal then gave, but he called Sheriff Luke McMennaway (who died before the trial) and requested him to bring a search warrant, an automobile mechanic, and a battery, as their car had broken down and he wished the sheriff to go with him to Wynne's house to arrest an ex-convict who was there. He did not say anything with reference to the shooting which had already taken place, nor does the evidence disclose whether this telephone message was or was not necessitated by the fact that the automobile had broken down and that repairs were necessary. It is apparent, however, that the battery had proved insufficient prior to this telephone communication.

The evidence is in marked and direct conflict as to whether any shots were fired from the inside of the room, except that of the shotgun, and as to whether the shot from the shotgun was fired before or after the revolver shots which caused Wynne's death. The house was torn down before the trial, the door only being preserved. Opportunity for verifying the marring of the interior by other bullets, if any, was thus destroyed.

Upon the above testimony it was the contention of the state of Tennessee that Carter and Vestal went to the house of the deceased in furtherance of a conspiracy between themselves and with Atkinson for the purpose of robbing him of any other whisky which might have been overlooked, and to kill

Wynne if need be to cover up their crime; that the alleged motive in going there, to arrest Morris, was false and fictitious; that the previous robbery, in which Carter participated, two weeks before, laid the foundation for the fatal episode; that the defendants commenced shooting through the door, without affording the deceased a reasonable opportunity to open it; and that these contentions were established by the general facts and circumstances of the case, by conversations between Atkinson, Carter, and Vestal before reaching the Wynne residence, and by incriminating conversations between Carter and Vestal when being driven back to Nashville after the shooting.

On behalf of the defendants, including Carter, it is contended that Vestal was informed Morris was at the Wynne residence; that he impressed Carter into service as a posseman to assist him in making the arrest; that upon arrival at the Wynne residence the identity of Vestal was announced to Mr. Wynne, as was also the fact that Vestal held a warrant for A. J. Morris; that they were told by Wynne that the door would be opened as soon as he (Wynne) put on his shoes, and that while waiting peaceably upon the outside at least two shots were fired from within, from either a rifle or a revolver; that the shotgun was then discharged, and the pellets wounded Carter, and that Carter and Vestal then opened fire through the panels of the door in necessary self-defense; and that both defendants were there in their purely official capacity as officers of the United States government attempting to make an arrest pursuant to warrant, and that as such officers they were justified in meeting forcible resistance by the use of force. The issues thus sharply defined were very fully presented to the jury by the court in its general charge, to which no exceptions appear of record.

[1, 2] The alleged error most strongly urged upon the court is that the attorney for the state of Tennessee was guilty of misconduct in applying the abusive epithets of "convict," "thief," and "murderer" to the plaintiff in error in his closing argument to the jury. The statement of this alleged misconduct of counsel for the state was stricken from the bill of exceptions by agreement of counsel, and such bill of exceptions now not only lacks any recital of the alleged misconduct, but from the portion which was excised it does not appear what action the court took with reference thereto, if timely exception was in fact taken. Ordinarily "a court of review will not consider objections not made during the trial of the cause and exhibited by the record, unless in a

criminal case it appears from the whole record that the error complained of, but to which no objections were made, or exceptions taken, clearly caused a miscarriage of justice." Optner v. United States, 13 F.(2d) 11, 13 (C. C. A. 6). Compare the more radical decisions of Brooklyn Heights R. Co. v. Ploxin, 294 F. 68, 70 (C. C. A. 2); McDonough v. United States, 299 F. 30, 38 (C. C. A. 9); Lucking v. United States, 14 F.(2d) 881 (C. C. A. 7).

[3] Upon authority of the case of Optner v. United States, supra, it is insisted that, notwithstanding the court may have committed no error in ruling upon an objection raised to misconduct, yet a new trial should be awarded, where it is manifest that such misconduct has caused a miscarriage of justice, or, otherwise expressed, where it is clearly apparent that reproof and admonition were wholly impotent to rid the case of the prejudicial effect of such misconduct upon the minds of the jury. Cf. Toledo, St. L. & W. R. Co. v. Burr & Jeakle et al., 82 Ohio St. 129, 134, 92 N. E. 27, 137 Am. St. Rep. 771. This is not, in our opinion, such a case. Not only is the evidence sufficient to support the verdict, but, conceding that in the event of such misconduct the duty rests upon the court to immediately interfere sua sponte, reprimand the offending counsel, and admonish the jury (Watkins v. State, 140 Tenn. 1, 8, 203 S. W. 344), it cannot be assumed, in the absence of a showing to the contrary, that the court did not perform its full duty in this particular. Warder, Bushnell & Glessner Co. v. Jacobs, 58 Ohio St. 77, 82, 50 N. E. 97.

[4, 5] The general rule is clearly that such "improper argument of a prosecutor is no ground for reversal, where the jury is explicitly directed to disregard it." Robilio v. United States, 291 F. 975, 986 (C. C. A. 6). See, also, Copeland v. United States, 55 App. D. C. 106, 2 F.(2d) 637. And where, as here, it must be assumed that the court did reprove counsel and properly instruct the jury at the time, such prejudice as was not thereby removed, or could not be removed by such instruction, was, we think, waived by the failure of the defendant to move for a mistrial. He should not thereafter be permitted to apparently consent to the continuance of the trial, which could presumably be discontinued only upon his motion after the jury had been sworn and he once placed in jeopardy, thus taking his chance of a favorable verdict, and if the verdict be "guilty" then assert it was founded to a material extent upon misconduct of opposing counsel. Cf. Levin v. United States, 5 F.(2d) 598, 602 (C. C. A. 9).

[6,7] It is next insisted by the plaintiff in error that the trial court erred in not directing a verdict at the conclusion of all the evidence. We have carefully read the record and believe that there is substantial evidence to support each necessary element of the state's contention. "It is not this court's province to determine the weight of the evidence, but in considering a motion for a directed verdict to determine whether it was legally sufficient to submit the case to the jury. Kelley v. United States (C. C. A.) 258 F. 392; Hodge v. United States (C. C. A.) 13 F.(2d) 596." Spiechowicz v. United States, 16 F.(2d) 1001 (C. C. A. 6). It is only when there is lacking substantial evidence upon a necessary element of the case that the court is justified in directing a verdict.

[8] But, even if the case was properly submitted to the jury, it is contended, the verdict is void for inconsistency, for the reason that a joint crime having been charged in the indictment, and Vestal having been acquitted upon the only possible hypothesis of self-defense in the performance of his official duties, plaintiff in error, as a posseman assisting Vestal in the performance of his official duties, must of necessity be entitled to exoneration for the same reasons. This conclusion does not follow from the record in the present case. Since the record discloses evidence sufficient to sustain a verdict of guilty as against both defendants, the fact that the defendant Vestal escaped such verdict against him does not justify the assumption that the other defendant must of necessity also escape. There was evidence establishing that the defendant Carter had participated in a prior robbery of the deceased, and it is a logical and persuasive conclusion from this evidence that Carter returned to the Wynne residence with knowledge of the possibility of meeting forcible resistance, if not in expectation of this. There was also evidence tending to prove that the defendant Carter's motive in so returning was for the purpose of securing additional whisky as a return for his trouble, and that his purpose in so returning was in itself illegal. These facts were not apparently divulged to Vestal, and the jury may well have concluded that, though Vestal went to the Wynne residence with the honest intention of arresting Morris, the purpose of Carter was illegal, and his intent felonious; that Carter expected trouble, if he was not in fact seeking it; and that, even if he availed himself of the opportunity of accompanying Vestal as a posseman, such opportunity offered merely a subterfuge or cloak for his actions and true purpose. Upon such hypothesis a verdict of "guilty of voluntary manslaughter" would be indicated. "In such a case, if it be assumed that one of the verdicts is erroneous, there is at least as much reason to consider the verdict of innocence incorrect as there is to consider the verdict of guilt improper." Gozner v. United States, 9 F.(2d) 603, 604 (C. C. A. 6).

[9] We pass, then, to the next contention that error intervened in the admission in evidence of the fact of the robbery of Wynne by Carter and others, some two weeks prior to the killing of Wynne. This evidence was offered and admitted for the sole purpose of showing criminal intent and improper motive, at least upon the part of the plaintiff in error. Its probative effect in this connection was corroborated by the conversation in evidence between Vestal and Carter, on their way to Nashville after the shooting, and the conversation, also in evidence, between Carter and Atkinson shortly prior to the episode. (Testimony of Atkinson.) We cannot view with approval the contention that the admission of evidence of the robbery served only to prejudice the minds of the jurors against Carter, or that such evidence compelled him to give testimony upon another pending charge of impersonating a federal officer, or denied to him the constitutional protection against self-incrimination. The record does not disclose that he was compelled to give evidence against himself upon such charge of impersonating a federal officer, or that he was denied the right to claim his privilege as to any question directly pertaining to such charge.

[10] Defendant also assigns error to the overruling of the motion of this defendant to dismiss and discharge him, because he had not been accorded a speedy trial in compliance with the state and federal Constitutions. The indictment was returned at the August term, 1920, and the trial was actually commenced in October, 1923, after removal and the disposal of numerous preliminary matters, including a plea to the jurisdiction of the court. During the interim the defendant was incarcerated in the state penitentiary upon a conviction for robbery of the whisky of the deceased, L. G. Wynne, and no motion for an earlier trial was filed or presented by him. In view of the fact that trial might have been deferred, in the absence of such motion, until the defendant's release from the state penitentiary, we cannot approve the contention that, after trial and verdict, he was entitled to be discharged because of failure to accord him such speedy trial. Daniels v. United States (C. C. A.) 17 F.(2d) 339, 343, 344. Being released upon bond, the delay between the return of the verdict and the overruling of the motion for a

new trial did not operate to the material prejudice of the defendant.

[11, 12] A large number of assignments of error are predicated upon the alleged failure of the court to conform its proceedings to the state practice. The particular departures from state practice principally relied upon are that the jury was not sequestered as required by state statute (appearing upon the record only by affidavit after verdict), that counsel for the state and for the defendants were permitted to make opening statements of their theories of the case and of the facts which they anticipated the evidence would disclose, that the court did not properly charge the theory of either of the defendants or of the state, and that the jury was not instructed to disregard the testimony of the defendant Atkinson after the state had moved his dismissal, and after it appeared in evidence that Atkinson had been rendered infamous by his conviction of the crime of larceny and his incarceration in the state penitentiary and that such infamy had never been removed. The prosecution being based upon an alleged violation of state law, and the cause having been removed to the federal courts, and we think rightly so removed upon the record then presented to the federal court (Maryland v. Soper [No. 1] 270 U. S. 9, 46 S. Ct. 185, 70 L. Ed. 449), it might be conceded that the District Court should adopt and apply the state law in analogy to the requirements of the Conformity Act.

In Tennessee v. Davis, 100 U. S. 257, 271, 272 (25 L. Ed. 648) the court draws the analogy between the administration of state laws by federal courts in civil suits and the administration of state laws by federal courts in criminal prosecutions. The court there says of federal courts: "They adopt and apply the laws of the state in civil cases, and there is no more difficulty in administering the state's criminal law. They are not foreign courts. The Constitution has made them courts within the states to administer the laws of the states in certain cases; and, so long as they keep within the jurisdiction assigned to them, their general powers are adequate to the trial of any case. * * * The general government should take cognizance of the case and try it in its own courts, according to its own forms of proceeding."

In Ellicott Machine Corp. v. Vogt Bros. Mfg. Co., 267 F. 945, 947, this court has very exhaustively considered, analyzed, and discussed the authorities upon the application of the Conformity Act to the trial of cases in the federal courts. The substance of the conclusion in that case was that the Conformity Act (Comp. St. § 1537) applied only to the manner in which the parties shall bring the case to issue and trial, or to substantive rights which the state statute gives to a party. The manner in which the judge performs his duties upon the bench, the order of introduction of evidence, the taking of exceptions, the making of opening statements, and even the sequestration of the jury (see Liverpool, etc., Ins. Co. v. Friedman Co., 133 F. 713 [C. C. A. 6]), are matters of "form of proceedings" and do not affect substantive rights. See, also, Virginia v. Felts, 133 F. 85, 91, 92 (C. C. Va.).

Assuming, therefore, that the court should follow the state law "as near as may be," the federal court is not deprived of the right to so administer the state law in accordance with its own forms of proceeding and practice. Whether this would preclude the admission in evidence of the testimony of one rendered infamous under the state law, and thus one who was precluded from giving testimony in state courts, we find it unnecessary to decide. As a defendant, Atkinson was entitled under the law of Tennessee to give testimony in his own defense. His ultimate acquittal rested largely upon such testimony, and no objection was made on behalf of either of the other defendants to the failure of the court to exclude Atkinson's testimony. Nor does the record disclose that objection was made or exception taken to the charge of the court, to the method of stating the theories of the defendants and the state, or to the failure of the court to sequester the jury. Under these circumstances such departure from state practice, if any, does not present a question properly raised by the record, nor one which this court can consider.

[13] The remaining assignments of error may be disposed of in a few words. It is contended by Carter that prejudicial error intervened in the refusal of the district attorney to represent him and in the refusal of the court to so require, and that this action of the district attorney and of the court presented an element of discrimination in favor of Vestal and prejudicial to Carter. While the facts of the case warranted its removal to the federal court under section 33 of the Judicial Code (Comp. St. § 1015), this statute contains no provision making it obligatory upon the government to supply counsel to the defendant so removing. We are of the opinion that no prejudicial error intervened in this particular.

[14] Lastly, it has been noted that the sentence committed the defendant to imprisonment under the state statute, but in the feder-

al penitentiary at Atlanta. This is manifestly improper, since, the offense being against the state and the state law being merely enforced in the federal courts, the learned trial judge should have sentenced the defendant to incarceration in the state penitentiary. For this reason, and this alone, the judgment of the trial court should be reversed, and the cause remanded to the District Court for resentence of the defendant to the state penitentiary, in lieu of the federal penitentiary at Atlanta, as may be provided by state law.