Alto B. SMITH, Plaintiff-Appellee,

v.

The TEXAS COMPANY, Defendant-Appellant.

No. 37, Docket 23112.

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1954.

Decided Feb. 2, 1955.

William A. Blank, Brooklyn, N. Y., for plaintiff-appellee.

Tompkins, Boal & Tompkins, New York City (Arthur M. Boal, New York City, of counsel), for defendant-appellant.

Before CLARK, Chief Judge, and MEDINA and HARLAN, Circuit Judges.

MEDINA, Circuit Judge.

This wholly unnecessary appeal is due to the circumstance that the trial judge followed the all-too-prevalent practice of giving instructions consisting of an aggregate of legal platitudes, which most of the jurors had probably heard repeated on numerous other occasions, without any delineation whatever of the factual issues in the case.

Plaintiff was an ordinary seaman aboard the Alabama, an oil tanker owned by defendant; and he was injured at Port Texaco, Texas, on December 4, 1950 when his leg was caught in a chock, through which an 8-inch hawser was being handled during the operation of casting off the eye of the hawser from a barge alongside. The accident happened at 6 a. m., while it was still dark, although the witnesses seem to have been able to observe what they were about and there is little dispute as to the basic facts.

The barge had been brought by tug to the port side of the Alabama about amidships, where she was moored by three lines, one astern, one from the starboard side of the barge to the port side of the Alabama, and one from bow to bow. When the loading of the oil was concluded, the stern and side lines were taken in, leaving the burden on the bow line, as both vessels headed into the current. Customarily, according to the testimony, the tug was made fast to the bow of the barge and the bow line was cast off by a slackening of the hawser at the twin or double bitt aboard the Alabama, and then, as the tug nudged her way into the current, the men aboard the barge disengaged the eye of the hawser from the hook bitt on the barge and the hawser was taken in on the Alabama. But on this occasion, due perhaps to the absence of the mate who was eating his breakfast instead of supervising the operation of casting off, as he usually did, the tug pulled the barge astern, with rather than against the current. Accordingly, when the men at the bitts took the turns off the bitts and slacked off, and plaintiff, stationed at the chock, was guiding the

heavy hawser with his foot, there never was enough slack to permit the eye of the hawser to be taken off the hook bitt on the barge. This led to an order from below to hold the line and the men behind plaintiff, perhaps instinctively but in any event with instant peril to plaintiff, put a couple of figure eights around the bitts and the hawser became taut, catching against plaintiff's foot and squeezing part of his leg into the chock. There was ample evidence to justify a finding of negligence in the manner in which the barge was operated, with rather than against the current, in the absence of the mate and in the making of the figure eights around the bitts. Indeed, it is difficult to see how the jury could have arrived at any other conclusion on the evidence; and a finding of absence of contributory negligence was also plainly justified.

Against this background we come to the first alleged error which was the admission, over objection, of evidence that after the accident defendant installed a huge 500-watt floodlight which lit up the whole forecastlehead. It is not disputed that this ruling was erroneous, but plaintiff claims the error was cured and the question of lights removed from the case.

The first colloquy on the subject occurred in the absence of the jury at the close of plaintiff's case. On the motion to dismiss the court ruled out "the question of unseaworthiness and that includes whether there is equipment and so forth, lights and so forth." He added, "I may state right now for the record that I shall rely on counsel in their summations to make plain to the jury what the negligence is, if any. I am not going into the facts unless I have to."

█ It has become so common for trial judges to omit even a skeleton statement of the factual issues, as precipitated by the evidence adduced by the respective parties, that it seems to be forgotten that the elucidation of the issues and the giving of reasonable guidance to the jury on the facts are among the prime functions of the trial judge. Moreover, where the judge, as here, sedulously avoids any reference to the facts of the case, some unexpected colloquy during summation, or in discussion of points raised by requests for instructions, or in responding to questions submitted to the jury, may produce an atmosphere of confusion, with inevitable appeals and occasional new trials, which merely add to the law's delays.

So here, having noted, in the presence of the jury, that "the question of equipment, appliances, seaworthiness, that is not for the jury," counsel proceeded to sum up. The previous colloquy, in the absence of the jury, which has already been quoted, had included the subject of "lights"; but even then in an ambiguous way, as the allegations of the complaint, relative to failure to furnish a safe place to work, were sufficiently broad to include a failure to furnish sufficient light in the vicinity of the forecastlehead where the bitts were located.

Almost at the outset of the summation by defendant's counsel it was asserted that unseaworthiness was out of the case, "no gear gave way, there was nothing wrong with the ship, no question of lights, that is out." This led to an interruption by plaintiff's counsel who claimed that the court had merely ruled "that the equipment of light would not be considered—the equipment itself not being defective." The whole question of lights was of such remote and peripheral relevance to the basic issues in the case that one would have expected the trial judge to rule then and there that lights were out for all purposes. But he did not. Instead:

"The Court: Well, now, the jury heard what took place there and they can decide."

One difficulty with this ruling was that the jury had not heard the court's ruling on the subject of lights; and, even if they had been present, they could only have speculated as to whether lights were still in the case on the subject of negligence as distinct from the subject of unseaworthiness.

In conclusion the court charged:

"As I have said to you before, I shall not refer to the facts stated

by these various witnesses as to what occurred. You heard the testimony. It is not difficult to cover the whole ground and I do not intend to stress any part of it."

Despite all this, we are convinced that the evidence supporting the complaint was so overwhelming and so persuasive that it would be a miscarriage of justice to order a new trial because of the erroneous admission of evidence of repairs after the accident. Other evidence points are too trivial for comment.

It is also claimed that the summation by plaintiff's counsel was inflammatory and improper. There is some basis for this claim; and we would have given it more serious consideration but for the fact that the trial judge cut the verdict in half and plaintiff has acceded to the reduction.

Affirmed.