**Louis P. LANNI, Plaintiff-Appellee,**

**v.**

**William WYER, as trustee of the Long Island Rail Road Company, Defendant-Appellant.**

**No. 113, Docket 23193.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1955.

Decided Feb. 11, 1955.

William J. O'Brien, Barry, Treanor, Shandell & Brophy, New York City, Desmond T. Barry, Joseph J. Brophy, New York City, of counsel, for appellant.

William A. Blank, Brooklyn, N. Y., for appellee.

Before SWAN and MEDINA, Circuit Judges, and DIMOCK, District Judge.

SWAN, Circuit Judge.

The plaintiff was injured on August 1, 1953 while working as a brakeman employed by the Long Island Rail Road. He brought the present action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Liability was conceded, and the case went to a jury to determine the amount of damages to be awarded. The jury returned a verdict for $55,000. The defendant moved to set aside the verdict and to grant a new trial on the ground that the verdict was excessive and was induced by inflammatory remarks of plaintiff's counsel during summation. This motion the district court denied. The defendant has appealed from the judgment and from the denial of his motion.

Little need be said with respect to the appellant's contention that the verdict is excessive. The voluminous record consists almost entirely of hospital records and testimony by doctors whose opinions differed. The plaintiff's experts were of opinion that he had sustained organic brain damage, upon which was superimposed a conversion hysteria, and that his disability was total and permanent. The defendant's doctors denied that the plaintiff's brain had been permanently damaged, agreed that he was suffering from conversion hysteria, and thought that his condition would improve when the present litigation was terminated. The character of his injuries and the permanence of his disability were issues left to the jury in a proper charge, as to which no complaint is made by the appellant. It would be futile to discuss the lengthy medical testimony. The plaintiff was 37 years old and had earned about $4,000 a year. If his disability was permanent the verdict of $55,000 was not excessive. If the jury thought his disability was not permanent, it was for them to decide how long it might continue and to assess the damages accordingly. We cannot know on which theory they acted; nor on either theory can we say their award was wrong. Armenia v. Wyer, 2 Cir., 210 F.2d 592, 596; Scott v. Baltimore & O. R. Co., 3 Cir., 151 F.2d 61, 64; Pariser v. City of New York, 2 Cir., 146 F.2d 431, 434; Herzig v. Swift & Co., 2 Cir., 154 F.2d 64, 66.

More can be said in favor of the appellant's contention that the verdict should be set aside because induced by counsel's inflammatory remarks on summation. His remarks, cited in the mar-

gin, were certainly inflammatory.[1] The railroad was under no duty to provide medical treatment for the plaintiff. See Cortes v. Baltimore Insular Line, 287 U.S. 367, 376, 53 S.Ct. 173, 77 L.Ed. 368. It had voluntarily paid for such medical care as he desired, and contrary to the advice of his own doctor, he had refused to be hospitalized. It was obviously improper to argue in summation that the railroad should have sent "big neuropsychiatrists" to see him and not left him "to the mercy of the family, little neighborhood doctors"; and that "after this lawsuit was started they abandoned Lanni in Rahway" and "want to write him off as debris and dunnage * * * at the best price that they can buy it at here." The "heat of oratory" is no excuse for such remarks; nor were they justified as an answer to defendant's summation in which plaintiff was characterized as a malingerer and "fraud". Their purpose can only have been to arouse passion or prejudice in the jury. During the course of the summation counsel for the defendant made objection but was requested by the court to reserve his objections until the end of the argument. He then renewed them and they were overruled, the court admonishing the jury that "you are to evaluate the evidence in this case apart from any ex-pressions of oratory or exhortations, or anything that borders on the inflammatory, though I must say that I did not see anything of that kind." In the charge the jury was again instructed to decide the case on the evidence and cast aside any emotions of bias, prejudice or prepossession, and was told that "a man who is injured cannot just sit on the side lines. He has got to make some reasonable effort to get medical attention."

No request was made to amplify the charge. Nor was any motion for a mistrial made when counsel's objections to the summation were overruled. In the Sixth Circuit it has been held that a failure to move for a mistrial is a waiver of the point. Carter v. State of Tennessee, 18 F.2d 850, 853; Morton Butler Timber Co. v. United States, 91 F.2d 884, 890. Our court, however, in Brown v. Walter, 62 F.2d 798, did not hesitate to reverse, although no motion for a mistrial had been made, where we thought the improper remarks sufficiently prejudicial. In the case at bar we think the remarks were counteracted by the court's admonition and charge and that the jury was not shown to have been influenced by them since its verdict was not excessive. The judgment will therefore be affirmed.

1. Folio 1865. " * * * Well, nobody was taking care of him. They were hiring for this distorted, damaged brain, and whatever condition he was in—these folks were hiring neighbors around the corner, a colored doctor to see him once or twice, Dr. Lance to see him once or twice, Dr. Williams to see him once or twice. The big neuropsychiatrists that the Long Island Rail Road would have available in New York, from Bellevue, and the Neurological Institute, and St. Vincent's, and all over—did they send any of them out to this loyal employee of 17 years? * * * No. They left him to the mercy of the family, little neighborhood doctors. * * *"

Folio 1890. " * * * Oh, ladies and gentlemen, when this lawsuit was started they abandoned Lanni in Rahway. They could have gotten the finest psy-chiatric treatment, because—Mr. Barry yelled they wanted to see his bills and they paid his bills—and you know what was read into evidence as to the bills that they paid—you know that they could have gotten the finest in town. They could have gotten Carey's Service with a Cadillac to drive out daily. * * *"

Folio 1895. " * * * I know where the truth is. Do you? Look at the record. Look at seventeen years of a little family broken up now by the third accident and now, now that he is permanently crippled, they want to write him off as debris and dunnage. He is human dunnage to them because he can't mount the boxcars and ride them any more. They want to ride him out—write him off—at the best price that they can buy it at here, because there is no compensation law to protect a railroad worker. * * *"

But we take this occasion to express to the able counsel for the plaintiff our disapprobation of his conduct on summation. This is not the first case in which complaint has been made of his summation. See Smith v. Texas Co., 2 Cir., 219 F.2d 74.