UNITED STATES of America,
Appellee,

v.

Berry BANKS, Appellant.

No. 10628.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 1, 1966.

Decided Dec. 2, 1966.

J. Robert Broudy, Norfolk, Va. (Court-appointed counsel) [Broudy & Broudy, on the brief] for appellant.

Roger T. Williams, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on the brief) for appellee.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

HAYNSWORTH, Chief Judge:

Berry Banks appeals from his conviction of a Dyer Act offense, complaining that he was denied a speedy trial and that the evidence was insufficient to support the Court's finding of guilt. We find no merit in either contention.

Until sometime in September, 1964, Banks had been living in the District of Columbia. On September 11 of that year a Chevrolet automobile was stolen in the District of Columbia. The proof showed that on September 20, 1964, Banks was in possession of the stolen vehicle in Southampton County, Virginia. At that time it was in a damaged condition, and he sought assistance in moving it. Witnesses were produced who testified that, at about that time, they had inquired of Banks where he got the automobile and had been told by him that he had purchased it in the District of Columbia. At that time the vehicle carried District of Columbia license plates, though those were later replaced with Wisconsin tags.

At the trial, the defendant testified in his own behalf that he had been picked up in Virginia by two sailors. He met them, he said, in a bar in Portsmouth, Virginia, and rode with them in the Chevrolet automobile from Portsmouth to Southampton County. During the ride, he testified, the two sailors told him that the automobile was stolen. Upon arrival in Southampton County, he testified that he dropped the two sailors at some tavern and he took the Chevrolet automobile on to a party. He was supposed to have returned to pick up the two sailors, but did not do so. He could furnish no information about the sailors or their names.

A warrant was issued for the defendant's arrest for the interstate transportation of the stolen Chevrolet on October 21, 1964. Banks could not be located for a number of months, however, and the warrant was not executed until March 5, 1965. On that date, Banks was interviewed by an F.B.I. agent in the Portsmouth City Jail where he was being held under an assumed name on a conviction for petty larceny and robbery. He denied that he was Berry Banks, but later admitted to the F.B.I. agent that he was. He denied all knowledge of the Chevrolet automobile and, of course, made no reference to the sailors whom he later testified had stolen it.

During the interview on March 5, 1965, Banks was told of the arrest warrant, and it was left with the jailer as a detainer. On May 3, 1965, Banks was indicted for interstate transportation of the vehicle, but Banks was not informed of the finding of the indictment until his discharge from a prison camp in Isle of Wight County on February 28, 1966.

On March 17, 1966, Banks, by court-appointed counsel, filed a motion to quash the indictment on the ground that he had not been accorded a speedy trial. That motion was denied and later, on May 3, 1966, he was tried and convicted.

The delay from September, 1964, when the interstate transportation of the stolen vehicle occurred, until May 3, 1966, when Banks was tried, is not insubstantial, but clearly the Government is not responsible for all of that lapse of time. Banks could not be located until March, 1965, and he was then being held under an assumed name. The indictment issued slightly less than two months later, when Banks had a little less than ten

months remaining to be served on his state sentence. After his release from the state sentence on February 28, 1966, the trial was delayed by the pre-trial motion to dismiss the indictment which required a full evidentiary hearing on April 12, 1966. The only period of delay attributable to the Government, which could be thought either unnecessary or unreasonable, was the ten month period following the indictment, during which Banks was held in state custody and during which the Government made no effort to bring him to trial.

Imprisonment in a state institution has been held an acceptable reason for delay in bringing a defendant to trial on Federal charges.[1] The rule, however, is subject to very substantial qualifications.

A short period of confinement elsewhere, indeed, may justify delay in bringing a defendant to trial on other charges. On the other hand, if the defendant has a number of years to serve in his present confinement, no substantial delay in the initiation of efforts to obtain custody of him for purpose of trial would be warranted.[2] The dividing line is a variable, depending, in each case upon a number of factors. The Supreme Court has said,[3] "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." The length of the prospective incarceration elsewhere is the most important single factor, but the prosecuting authorities are entitled to give consideration to the probable difficulty and the cost of obtaining custody of the defendant for the purposes of trial and of his return to his original place of detention. A period of delay which would be unreasonable if the defendant is held in the same area in which the trial is to be had, if officials are cooperative and writs of habeas cor-

pus ad prosequendum readily obtainable, might be quite reasonable if all of those factors were at the opposite pole.

The prosecuting authorities should act with reason. Their endeavor should be to bring the defendant to trial as soon as that may reasonably be done. Incarceration elsewhere, then, is not an excuse for inaction over a substantial period of months, but it does have an immediate bearing upon the reasonableness of the interval between the charge and the trial. The greater the difficulty and cost of obtaining temporary custody of the defendant, the longer the interval retains its reasonableness.

The record here contains no suggestion of any appreciable difficulty in obtaining temporary custody of Banks for purposes of a trial. His state conviction was had in Portsmouth, Virginia, which is immediately across the Elizabeth River from Norfolk where his trial on the federal charge was to be had. Isle of Wight County, where he was held by the state after he was transferred from Portsmouth, is a little farther west, but still in the general area; it is on the south side of the James River across from Newport News. We may assume that an appropriate court would have granted a writ of habeas corpus ad prosequendum and that the jailers, prison farm, and other state officials would have been cooperative. In short, there is in this record no indication of any substantial difficulty or expense in obtaining custody of Banks for trial of the federal charge during his service of the state sentence.

While we cannot justify the District Attorney's inactivity during the ten-month interval between the indictment and Bank's release from state confinement, in appraising the right to a speedy trial we are required to look to the possible prejudice the defendant has

1. United States v. Simmons, 2 Cir., 338 F.2d 804; Stevenson v. United States, 107 U.S.App.D.C. 398, 278 F.2d 278. See Bistram v. People of the State of Minnesota, 8 Cir., 330 F.2d 450.

2. United States v. Simmons, 2 Cir., 338 F.2d 804.

3. Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950.

suffered as well as to the length of the delay and the reason for it.[4] The delay was not so long as to make a prima facie showing of prejudice.[5] During that interval Banks was not confined on the federal charge. There was no loss of witnesses. He suffered no detriment from it.

■ Banks undertook to show some prejudice from a claimed loss of his own recollection. He testified at the hearing on the motion to dismiss the indictment regarding his claim that the automobile had been stolen by two sailors and that his first contact with the vehicle was after its transportation to Virginia. He testified that he could not then recall the names of the sailors, but he also said he could not have recalled their names six months earlier. He speculated that he might have recalled their names on March 5, 1965, when he was first interviewed by the F.B.I. agent if the agent had quizzed him closely about it.[6] The agent, of course, had not questioned Banks about any sailors, for Banks denied all contact with and knowledge of the stolen vehicle. However, on March 5, 1965, Banks did know that a warrant had been issued for his arrest for interstate transportation of the automobile and that he would probably be tried on that charge. If he was not the thief or the transporter of the stolen vehicle, he had every incentive to think consciously of his actual contact with the vehicle and its possessors and to fix the details in his memory. A vague and speculative claim founded upon a story which the trial judge wholly disbelieved is insufficient to support a finding of actual prejudice.

■ While we think that the District Attorney should have taken steps to bring Banks to trial during the ten-month interval after the indictment during which Banks was in custody of the state, considering all of the circumstances, including the length of the delay and the possible prejudice to Banks, we think the District Court properly concluded after the hearing on the motion to dismiss that there had been no deprivation of the defendant's constitutional right to a speedy trial.

■ The objection that the testimony was insufficient to support the conviction is premised upon the claim that the defendant's testimonial version of the facts destroyed the presumption or the permissible inference that arises from proof of possession of recently stolen property.[7] The defendant's testimonial version of what occurred, of course, was inconsistent with the inference that he was the thief and the interstate transporter of the automobile. All that the defendant's testimonial claim did, however, was to point up the factual issue for resolution by the fact-finder.

The trial was to the Court without a jury and the Court expressed the underlying findings in some detail. It specifically disbelieved the defendant's claim. It noted its observation of the defendant and contrasted his testimonial claim with his original denial of his identity when questioned by the F.B.I. agent and his denial of all knowledge of the vehicle. It was not required to accept the defendant's testimonial claim, and when it was rejected as untrue, the Court, as finder of the fact, was thoroughly justified in drawing the per-

4. United States v. Simmons, 2 Cir., 338 F. 2d 804. The right, of course, may be waived, but there is no basis for a claim of waiver here. During the ten-month period Banks did not demand a speedy trial, but he knew only of the arrest warrant and was uninformed that he had been indicted.

5. Stevenson v. United States, 107 U.S.App. D.C. 398, 278 F.2d 278; United States v. Simmons, 2 Cir., 338 F.2d 804; Chinn v. United States, 4 Cir., 228 F.2d 151.

6. This is a reversal of the usual claim of defendants that they were questioned too much by law enforcement officials.

7. United States v. Luciano, 4 Cir., 343 F.2d 172; United States v. Kolakowski, 4 Cir., 314 F.2d 699.

missible inference that Banks had stolen and transported the vehicle, which logically arose from proof of his possession of the car in Virginia and from his statements to witnesses that he had purchased it in the District of Columbia.

Affirmed.