Robert James PITTS, Appellant,

v.

STATE OF NORTH CAROLINA, Appellee.

No. 11616.

United States Court of Appeals Fourth Circuit.

Argued Feb. 6, 1968.

Decided April 1, 1968.

Melvin R. Manning, Richmond, Va. (Court-assigned counsel) [McCaul & Pearsall, Richmond, Va., on brief], for appellant.

Ralph A. White, Jr., Staff Atty., Raleigh, N. C., Office of the Atty. Gen., of North Carolina (T. W. Bruton, Atty. Gen., of North Carolina, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

Almost sixteen years after initiating prosecution, the State of North Carolina, at all times knowing the whereabouts of the appellant Robert James Pitts, sought and obtained his conviction for armed robbery. From the District Court's denial of his petition for a writ of habeas corpus, Pitts appeals, alleging that the extreme delay deprived him of his Sixth Amendment right to a speedy trial.[1] We uphold appellant's contention and order issuance of the writ.

Pitts allegedly robbed and beat one Clarence Rollins on August 3, 1949, in Cabarrus County, North Carolina. That day the victim filed a complaint, naming Pitts as one of his assailants. By the first week of September, the Cabarrus County police were aware that Pitts was being detained on independent charges in a Cleveland County, North Carolina, jail. Through newspaper accounts and pictures, the Cleveland County sheriff widely publicized Pitts's detention, so that other North Carolina authorities could assert any outstanding charges before the sheriff released him to officials of South Carolina, where he was wanted for burglary.

Other North Carolina authorities indicated no interest in Pitts, and he waived extradition and was removed on October 1, 1949, to South Carolina. There he was convicted of the burglary and sentenced to imprisonment for twenty-one years. Not until October 17, 1949, was an arrest warrant sworn out against Pitts for the North Carolina armed robbery, and on the basis of that warrant, North Carolina lodged a detainer against him at the South Carolina prison. Appellant did not learn of the detainer until November, 1956, when he applied for clemency and was denied, at least in part because of the detainer.

At no time during appellant's incarceration in South Carolina did North Carolina make any attempt to bring him to trial on the 1949 armed robbery charge. On his release in December, 1964, he was returned to North Carolina, and thereupon indicted and tried in Cabarrus County on May 23 and 24, 1965. Pleading not guilty, Pitts took the stand and testified that he was unable to recall where he was on the night of the robbery sixteen years earlier. The trial court found Pitts guilty and sentenced him to imprisonment for ten to fifteen years in the North Carolina Penitentiary. No appeal was taken. Having exhausted his state post-conviction remedies, appellant brought his petition for a writ of habeas corpus in the District Court. Relief was denied on the ground that he had failed to demonstrate prejudice from the delay.

I

The fundamental right to a speedy trial, its origins tracing back at least to the Magna Carta,[2] is designed

---

1. It is established law that this Sixth Amendment right applies to the states through the Fourteenth Amendment. Klopfer v. State of North Carolina, 386

U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

2. See Petition of Provoo, 17 F.R.D. 183, 196 (D.Md.), aff'd mem., 350 U.S. 857,

in part to insure that a criminal defendant is not rendered unable to rebut charges against him because undue delay[3] has caused memories to dim or witnesses to disappear. See United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); Hanrahan v. United States, 121 U.S.App.D.C. 134, 348 F. 2d 363 (1965). To a prisoner, this right is particularly precious "since he is less able to keep posted on his witnesses' whereabouts than is an accused at large." Note, 57 Colum.L.Rev. 846, 865 (1957). See also State v. Hollars, 266 N.C. 45, 145 S.E.2d 309 (1965). Because this constitutional guarantee is so basic to a fair trial, courts have made it abundantly clear that after a delay of this magnitude, it is not the defendant who must bear the burden of showing prejudice, but the state which must carry the obligation of proving "that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." Williams v. United States, 102 U.S.App.D.C. 51, 250 F.2d 19, 21 (1957); United States v. Lustman, 258 F.2d 475 (2d Cir. 1958); United States v. Chase, 135 F.Supp. 230 (N.D. Ill.1955). See also Klopfer v. North Carolina, supra, which clearly indicates that a defendant need show no prejudice to prevail on his assertion that he has been denied the right to a speedy trial. Recently, this court reiterated the proposition that delay may be "so long as to make a prima facie showing of prejudice." United States v. Banks, 370 F.2d 141, 145 (4th Cir. 1966). The State in the present case has utterly

failed to show a lack of prejudice, especially in light of appellant's very credible statement on the witness stand that he had no recollection of his activities on a particular night sixteen years in the past.

The attempted justification for the State's failure for so long to bring Pitts to trial is that a defendant imprisoned in another jurisdiction has no right to a prompt hearing. This view, once entertained by some federal and state courts, was founded on the inability of one jurisdiction to require another as a matter of right to relinquish custody of a prisoner wanted for trial. See, e. g., Nolan v. United States, 163 F.2d 768 (8th Cir. 1947); Ex Parte Schechtel, 103 Colo. 77, 82 P.2d 762, 118 A.L.R. 1032 (1938); Raine v. State, 143 Tenn. 168, 226 S.W. 189 (1920). The dubious theory appears to have been that since a request for custody might not be honored, the prosecutors have no obligation to make the request in the first place.[4] As one commentator observed over a decade ago, "In the past, this denial [of a right to a speedy trial] may have been justified in view of the legal uncertainties of extradition and the difficulties of travel and communications. But these problems have largely disappeared." Note, 57 Colum.L.Rev. 846, 865 (1957).

In recent years, a rapidly expanding number of state and federal cases have produced a clear trend rejecting this doctrine and demanding a showing of due diligence by prosecutors to secure the presence for trial in their own jurisdic-

76 S.Ct. 101, 100 L.Ed. 761 (1955) for a discussion of the historical antecedents of this right which is embodied in the federal constitution and in all but five of the state constitutions. *See also* Note, 108 U.Pa.L.Rev. 414, 416 (1960).

3. Necessarily, the delay is computed neither from the date of the offense nor the date of the indictment, but from the formal initiation of criminal proceedings, in this case the swearing out of the warrant for Pitts's arrest. *See* Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959); Lucas v.

United States, 363 F.2d 500 (9th Cir. 1966); Nickens v. United States, 116 U. S.App.D.C. 338, 323 F.2d 808 (1963).

4. A recent law review note opines that "the true reasons for delaying trial of convicts in other jurisdictions are punishment, convenience and cost. Punitive motives often predominate. One prosecutor wrote that a convict could 'sit and rot in prison' rather than be brought promptly to trial in the prosecutor's jurisdiction." Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions, 77 Yale L.J. 767, 772 (1968).

tion of an accused imprisoned or held for a substantial period in another jurisdiction. The Court of Appeals for the District of Columbia, in dismissing a federal indictment against a defendant whose trial had been delayed seven and a half years because of incarceration in a state prison on another charge noted: "imprisonment [in New York State] does not excuse the Government's long delay in bringing [the defendant] to trial here, in the absence of a showing that the Government at a reasonably early date, sought and was unable to obtain his return for trial." Taylor v. United States, 99 U.S.App.D.C. 183, 238 F.2d 259, 261 (1956); see also Fouts v. United States, 253 F.2d 215 (6th Cir. 1958). Conversely, state courts have held that the fact that a defendant is being held in federal custody provides no excuse for denying him the right to a speedy trial in the state courts. See, e. g., State v. Patton, 76 N.J.Super. 353, 184 A.2d 655 (1962); People v. Piscitello, 7 N.Y.2d 387, 198 N.Y.S.2d 273, 165 N.E.2d 849 (1960). But see Bistram v. People of State of Minnesota, 330 F.2d 450 (8th Cir. 1964), which while placing no burden on the state, specifically reserves the right of defendants to assert denial of speedy trial in any subsequent state hearing. In *Patton,* supra, the court unequivocally declared that the state has the obligation, despite expense, to seek a prisoner from federal authorities who are confining him for another charge. In *Piscitello,* supra, failure to make the effort was held fatal to the State's delayed attempt to try the defendant.

■ Similarly, in cases involving sister states, courts have found it constitutionally necessary for prosecutors to make reasonable efforts to extradite for speedy trial prisoners held in another state. See, e. g., Pellegrini v. Wolfe, 225 Ark. 459, 283 S.W.2d 162 (1955); People v. Bryarly, 23 Ill.2d 313, 178 N.E.2d 326 (1961); People v. Winfrey, 20 N.Y.2d 138, 281 N.Y.S.2d 823, 228 N.E.2d 808 (1967). These courts reason that since most state executives have discretionary power upon request of another sovereignty to release a prisoner for purposes of trial, state prosecutors are under a duty to seek a temporary conditional release in an attempt to bring the defendant promptly to trial. Recognizing that denial of the request by the imprisoning state would constitute a valid excuse for delay in the demanding state, these cases insist upon at least a good faith effort by the prosecutors. In the instant case, no effort of any kind was undertaken during the entire period that Pitts was imprisoned in South Carolina.

■ Two factors here are crucial in our rejection of the State's assertion that South Carolina's incarceration of Pitts obviated the need for any efforts to bring him to trial. The first is the length of the twenty-one year sentence which Pitts received in South Carolina. As this court said in United States v. Banks, supra, 370 F.2d at 144:

"A short period of confinement elsewhere * * * may justify delay in bringing a defendant to trial on other charges. On the other hand, if the defendant has a number of years to serve in his present confinement, no substantial delay in the initiation of efforts to obtain custody of him for the purpose of trial would be warranted. * * * Incarceration elsewhere * * is not an excuse for inaction over a substantial period of *months* * * *" (emphasis added).

Here the delay spanned not a few months, but many years—more than a decade and a half. This is hardly a borderline case. The second factor is the explicit statutory authority vested in North Carolina officials to make such a request of South Carolina. In 1937, North Carolina adopted the Uniform Criminal Extradition Act, which provides in pertinent part:

"When it is desired to have returned to this State a person charged in this State with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him

in another state, the Governor of this State may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this State as soon as the prosecution in this State is terminated." N.C.Gen.Stat. § 15–59 (1953).[5]

In these circumstances, North Carolina's failure to take even the slightest step to procure a temporary release and a prompt hearing constituted a patent violation of the defendant's Sixth Amendment right.

## II

■■■ The State contends, however, that even assuming a constitutional violation, Pitts has waived his right by failing while in the South Carolina Penitentiary to demand an early trial. It is true, of course, that "this right to a speedy trial is a personal right which may be waived if the accused fails to claim this right timely." Chinn v. United States, 228 F.2d 151, 153 (4th Cir. 1955); United States v. Lustman, supra. However, there are several well-recognized exceptions to this doctrine. In Hill v. United States, 310 F.2d 601, 603 (4th Cir. 1962), this court listed as illustrative of these exceptions situations "where the defendant had no knowledge of the pending charge" [Taylor v. United States, supra] and "where defendant was powerless to assert his right because of imprisonment, ignorance and lack of legal advice" [United States v. Chase, supra]. We hold that Pitts comes squarely within each of these exceptions.

The record clearly establishes that until November, 1956, Pitts had no knowledge or intimation of the 1949 charge.

It is academic to speculate now upon what he should have done upon learning of the charge for the first time, for by then, after North Carolina's seven year failure to make any move to bring him to trial, that State's authorities may have irrevocably forfeited the opportunity to prosecute him constitutionally. Nevertheless, it is instructive to observe the manner in which Pitts learned of the pending serious criminal proceeding.

In refusing his application for an early parole, the South Carolina prison officials informed Pitts that a detainer had been lodged against him by North Carolina. At his habeas hearing below, Pitts testified that he considered the detainer simply a "nuisance," having no substance and obtained for the sole purpose of harassment. There is no indication in the record that Pitts was ever advised of the exact nature of the charges underlying the detainer or of his right to request a prompt trial on the charges. All that he seems to have been told is that because a detainer had been filed he was not eligible for clemency in South Carolina.

Detainers, informal aides in interstate and intrastate criminal administration, often produce serious adverse side-effects. The very informality is one source of the difficulty. Requests to an imprisoning jurisdiction to detain a person upon his release so that another jurisdiction may prosecute or incarcerate him may be filed groundlessly, or even in bad faith,[6] as suspected by the appellant in this case. The accusation in a detainer need not be proved; no judicial officer is involved in issuing a detainer. As often happens, the result of the then unestablished charge upon which the detainer in this case rested was that the detainee was seriously hampered in his quest for a parole or commutation. See Detainers and the Correctional Process, 1966 Wash.U.L.Q. 417, 418; The Detain-

---

5. *Compare* 18 U.S.C. § 4085 which permits a state executive to request the transfer of a federal prisoner and requires the United States Attorney General to order such a transfer if he finds it in the public interest.

6. "Many detainers are apparently filed for punitive reasons; they are withdrawn shortly before the convict's release, having served their purpose by curtailing prison privileges and preventing parole." Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions, 77 Yale L.J. 767, 773 (1968).

er: A Problem in Interstate Criminal Administration, 48 Colum.L.Rev. 1190, 1193 (1948). In addition to restricting parole and commutation eligibility, detainers often bar prisoners from privileges, such as serving as prison trusties. Most importantly, perhaps, detainers may seriously handicap rehabilitative efforts. See Caldwell, Criminology, 686 (1965) and other sources cited in the ABA's Project on Minimum Standards for Criminal Justice, Report on Standards Relating to Sentencing Alternatives and Procedures, 185–6 (Tentative Draft, 1967). Since it is estimated that as many as one-half of the detainers lodged are never pursued by the requesting authority, Detainers and the Correctional Process, supra at 417, the inherent uncertainty of a detainee's future interferes with the development by prison authorities of an effective rehabilitation program and a proper attitude of the prisoner towards it. Ibid at 421. As Judge Breitel recently observed: "There is no proper criminological purpose served in holding several prosecutions over a defendant's head. Neither correction nor deterrence is thus served * * *." People v. Winfrey, supra, 281 N.Y.S.2d at 829, 228 N.E.2d at 812.

In our case, whatever may have been the psychological impact of the detainer, it clearly served both to reduce the possibility of a shortening of the South Carolina sentence and to lengthen the delay of the trial in North Carolina. Both of these adverse effects would have been avoided if the reasonable and salutary procedure outlined in § 3.1 of the ABA's Project on Standards for Criminal Justice, Report on Standards Relating to Speedy Trial (adopted 1968) had been followed. Fully set forth in the margin,[7] the section would require that upon a prosecutor's filing a detainer, the prisoner be advised of the charge and of his right to demand a trial.[8]

Since this ingredient of basic fairness was excluded, by keeping the prisoner in ignorance of his right to demand a trial, we will not hold that he has waived his fundamental right to a speedy trial by failing to seek an immediate hearing seven years after the prosecution had initiated proceedings against him.

Nor do we find a waiver because of the failure of Pitts's attorney to raise a specific recorded objection at the trial. Indulging, as we must, " 'every reasonable presumption against waiver' of fundamental constitutional rights," Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), we point out the following por-

---

7. "3.1 Prosecutor's obligations; notice to and availability of prisoner.

"To protect the right to speedy trial of a person serving a term of imprisonment either within or without the jurisdiction, it should be provided by rule or statute and, where necessary, interstate compact, that:

"(a) If the prosecuting attorney knows that a person charged with a criminal offense is serving a term of imprisonment in a penal institution of that or another jurisdiction, he must promptly:

(i) undertake to obtain the presence of the prisoner for trial; or

(ii) cause a detainer to be filed with the official having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

"(b) If an official having custody of such a prisoner receives a detainer, he must promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs such official that he does demand trial, the official shall cause a certificate to that effect to be sent promptly to the prosecuting attorney who caused the detainer to be filed.

"(c) Upon receipt of such certificate, the prosecuting attorney must promptly seek to obtain the presence of the prisoner for trial. * * * *"

8. It should be noted that in July, 1965, both North and South Carolina enacted and became parties to the Interstate Agreement on Detainers, which embodies the principles outlined in fn. 7. See N.C.Gen.Stat. § 148–89; S.C.Code § 17–221.

tion of the attorney's testimony at the habeas hearing below:

"Q. When this matter came on for trial was any objection made on Mr. Pitts's behalf as to the lack of a speedy trial?

A. It was mentioned in court. I don't remember if it was in the form of a motion, but I talked with Judge T. C. Fronenburger in regard to it.

\*　\*　\*　\*　\*　\*

Q. Was any oral motion made objecting to the lack of a speedy trial?

A. I objected to Judge Fronenburger, but I can't say whether it was in open court or whether it was in Chambers."

No rebuttal by the State of this testimony appears in the record. Moreover, we note that a few months after the trial there was addressed to the trial court a written motion seeking to set aside the verdict and judgment on the specific ground that defendant's Sixth Amendment right to a speedy trial had been violated. The court considered the motion and denied it, not because it was not timely but because the court thought the delay justified by Pitts's incarceration in South Carolina. Therefore, we are unable to conclude that "the attendant facts \* \* \* show clearly and convincingly that [defendant] relinquish[ed] his constitutional rights knowingly, intelligently and voluntarily." United States v. Hayes, 385 F.2d 375, 378 (4th Cir. 1967).

### III

When a criminal defendant has been deprived of his right to a speedy trial, the only effective remedy may be a voiding of his conviction and a dismissal of the charges against him. See, e. g., Taylor v. United States, supra; United States v. Chase, supra; United States v. Provoo, supra. Plainly, this is the case here. We therefore remand to the District Court with instructions to grant the petition for a writ of habeas corpus. In view of this disposition, it is, of course, unnecessary to pass upon the substantial question petitioner raised regarding his trial counsel's failure to perfect an appeal, despite the payment of $1500, which petitioner clearly understood would cover both his trial and any necessary appeal.

The judgment of the District Court is reversed and the case remanded with instructions to order petitioner's release.

Reversed.