**Kenneth SHORT, Jr., Petitioner-Appellant,**

v.

**Harold J. CARDWELL, Warden, Respondent-Appellee.**

**No. 20903.**

United States Court of Appeals,
Sixth Circuit.

July 7, 1971.

---

Alan Arnold, Cleveland, Ohio, for petitioner-appellant, November & Arnold, Cleveland, Ohio, on brief.

Leo J. Conway, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee, William J. Brown, Atty. Gen. of Ohio, Columbus, Ohio, on brief.

Before EDWARDS, BROOKS and MILLER, Circuit Judges.

EDWARDS, Circuit Judge.

In this case a District Judge in the United States District Court for the Northern District of Ohio, Eastern Division, denied a petition for writ of habeas corpus without evidentiary hearing. Appellant appeals, contending that the State of Ohio's delay between 1962 and 1966 in trying his indictment for armed robbery represented a per se violation of his federal constitutional right to a speedy trial. The delay complained of occurred principally while appellant was imprisoned serving a federal sentence and appellant had made no demand for trial on the Ohio charge.

Appellant also contends that the District Judge should have conducted an evidentiary hearing on his contention that he was unaware of his right to a speedy trial and that that explains and excuses his failure to demand it while he was in the federal penitentiary. He also contends that he was prejudiced by being deprived of appointed counsel and by the fact that certain alibi witnesses were not available at his final trial. He claims that the District Judge should have taken evidence and made findings of fact on this.

This court has not been impressed that the mere passage of time between indictment and trial constitutes a per se violation of the Sixth Amendment. Up to this point, in the absence of a demand for trial, a prisoner cannot sit in a foreign jurisdiction jail or penitentiary, allow time to run, and then subsequently claim that that time alone warrants his being found to have been constitutionally deprived.

In two recent opinions this court has reiterated its adherence to the currently prevailing federal rule that there must be a demand by the accused before delay alone requires dismissal of criminal charges under the Sixth Amendment. Barker v. Wingo, 442 F.2d 1141 (6th Cir. 1971); United States v. Heard, 443 F.2d 856 (6th Cir. 1971).

In arguing for a per se rule, appellant relies upon: Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Klopfer v.

North Carolina, 386 U.S. 213, 222, 87 S. Ct. 988, 18 L.Ed.2d 1 (1967).

But in each of these three cases, the Supreme Court dealt with records of governmental delay after the accused had demanded prompt trial.

The basic rule in the United States Supreme Court to this date concerning trial delay has been stated as follows:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial.[6] *This guaran-*

6. 'In all criminal prosecutions, the accused shall enjoy the right to speedy and public trial * * *.' U.S.Const., Amendment VI.

*tee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.* However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87 [25 S.Ct. 573, 576, 49 L.Ed. 950]. 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361 [77 S.Ct. 481, 486, 1 L.Ed.2d 393]. '[T]he essential ingredient is orderly expedi-

tion and not mere speed.' Smith v. United States, 360 U.S. 1, 10 [79 S.Ct. 991, 997, 3 L.Ed.2d 1041]."

United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). (Emphasis added.) (Footnote in quotation.)

We note, however, that the tone of the Supreme Court's opinions has changed somewhat in its latest Sixth Amendment case. In the *Dickey* case Chief Justice Burger's opinion for the court says:

"As noted by the Court in Smith v. Hooey, the holding of the *Klopfer* case was that

'the Fourteenth Amendment, [applying] the Sixth Amendment right to a speedy trial is enforceable against the States as "one of the most basic rights preserved by our Constitution." ' 393 U.S., at 374–375 [89 S.Ct. 575].

From this the Court went on to hold that on demand a State had a duty to make a diligent and good-faith effort to secure the presence of the accused from the custodial jurisdiction and afford him a trial. In *Smith* we remanded the case to the state court without deciding whether the defendant, when available for trial in the state court, would be required to show prejudice arising from the delay.

"Here the State of Florida brought the petitioner back to Florida, tried, and convicted him. Petitioner's challenge is directly to the power of the State to try him after the lapse of almost eight years during which he repeatedly demanded and was denied a trial.

"The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed. If the case for the prosecuton calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law,

and far less so in criminal cases.[7] Al-

7. Cf. American Bar Association Project on Standards for Criminal Justice, Speedy Trial § 4.1 (Approved Draft 1968).

though a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and *the duty of the charging authority is to provide a prompt trial.*[8] This is brought sharply into

8. Cf. American Bar Association Project on Standards for Criminal Justice, The Prosecution Function and the Defense Function § 2.9 (Tent. Draft Mar. 1970).

focus when, as here, the accused presses for an early confrontation with his accusers and with the State. Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law.

"In addition to exerting every effort to require the State to try him, there is present in this record abundant evidence of actual prejudice to petitioner in the death of two potential witnesses, unavailability of another, and the loss of police records. This is sufficient to make a remand on that issue unnecessary.[9] We there-

9. Cf. Regina v. Robins, 1 Cox Crim. Cas. 114 (Somerset Winter Assizes, 1844).

fore reverse and remand to the District Court of Appeal of Florida, First District, with directions to vacate the judgment appealed from and direct the dismissal of any proceedings arising out of the charges on which that judgment was based."

Dickey v. Florida, *supra* 398 U.S. at 37–38, 90 S.Ct. at 1568. (Footnotes in quotation). (Emphasis added.)

This language led Justice Brennan to record the questions which he thought the Court's opinions had left unanswered:

"I do not read the Court's opinion as deciding that in post-*Klopfer* cases (1) the defendant can challenge only delay occurring after his arrest; (2) he is not entitled to a speedy trial unless he demands it at the time of the delay; (3) he must prove actual prejudice, or (4) the delay must be deliberately caused by the government. It is timely to note that the Court has as yet given scant attention to these and other questions essential to the definition of the speedy-trial guarantee." Dickey v. Florida, *supra* at 40, 90 S. Ct. at 1570.

■ While noting that it is at least possible that the Supreme Court may move to alter the demand rule as it has been followed to date in most federal courts, we adhere in this case to the settled law of this circuit. It is possible, however, that effective answers to some of the problems referred to may be found in court administration and in rule making. 2d CIR. R. REGARDING PROMPT DISPOSITION OF CRIMINAL CASES (Jan. 5, 1971) FLA. SUPER.Ct.R. ON SPEEDY TRIAL, 8 CRIM.L.RPTR. 2453 (1971); THE JUDICIAL CONFERENCE OF THE STATE OF NEW YORK: *Rules Governing Release From Custody and Dismissal of Prosecution* (Effective May 1, 1972); ABA PROJECT ON MINIMUM STANDARDS FOR CRIMINAL JUSTICE, *Standards Relating to Speedy Trial* Sec. 3.1(a) (Approved Draft 1968).

In any event, we agree with the District Judge that this record shows no purposeful or oppressive delay on the part of the prosecution. Pollard v. United States, 352 U.S. 354, 361, 77 S. Ct. 481, 1 L.Ed.2d 393 (1957). And the two years during which appellant was in federal prison do not of themselves represent a Sixth Amendment violation.

United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

 We have, however, noted that one of the recognized purposes of the Sixth Amendment was "to limit the possibilities that long delay will impair the ability of an accused to defend himself." United States v. Ewell, *supra* at 120, 86 S.Ct. at 776 (1966). As to the claims of prejudice resulting from delay, the circumstances of this case are somewhat extraordinary. The total time between first indictment and ultimate trial was over four years. In the meantime the first armed robbery indictment was dismissed because of the state's failure to prosecute it; the appellant was indicted a second time (for robbery of another victim during the same robbery), and a mistrial due to a hung jury resulted—all before his final jury trial and conviction.

Appellant's petition says concerning this last trial:

> "The result of this excessive prejudicial delay has been that the petitioner was unable to properly defend himself. In case number 84005, several important witnesses became unavailable due to the lapse of time. An essential witnesses (sic) for the defense could not be found at the time of trial; yet, at an earlier date the same witness was available. Another essential witness also was unavailable, though she had been ready to testify earlier. A witness who had testified for the petitioner in the first trial of Case 84005, was unable to testify due to a critical heart condition. Finally through the lapse of time, two persons who would have testified for the defense died before the case came to trial."

Appellant's petition also asserts deprivation of counsel for over two years after indictment. *See* Coleman v. United States, 442 F.2d 150 (D.C.Cir.1971).

While we read the response by the State of Ohio as denying all of these contentions, we are unable to ascertain how the District Judge determined the facts without the taking of testimony.

The judgment is vacated and the case is remanded for evidentiary hearing.