**Freeman C. EDMAISTON, Petitioner-Appellant,**

v.

**William S. NEIL, Warden, Respondent-Appellee.**

**No. 21041.**

United States Court of Appeals,
Sixth Circuit.

Dec. 3, 1971.

Weick, Circuit Judge, dissented and filed opinion.

H. Fred Hoefle, Cincinnati, Ohio (Court appointed), for petitioner-appellant.

James M. Tharpe, Sp. Counsel, State of Tenn., Memphis, Tenn., for respond-

ent-appellee; David M. Pack, Atty. Gen. and Reporter, State of Tenn., of counsel.

Before WEICK, CELEBREZZE and PECK, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the District Court's denial of a writ of habeas corpus. On appeal Appellant's sole argument is that the District Court erred in ruling that he was not denied a speedy trial by the Tennessee courts. An evaluation of this claim requires a rather extended exposition of the facts surrounding Appellant's 1969 robbery conviction.

Late in March, 1960, Appellant was charged with the March 14, 1960 robbery of a liquor store employee in Shelby County, Tenn. A warrant was issued for his arrest, but was not executed because by the time Appellant was located he was in the custody of Illinois authorities, having been arrested on an Illinois robbery charge on March 20, 1960.

Once informed of the Illinois arrest two Memphis detectives journeyed to the Illinois jail where Appellant was held and informed him that he was wanted for the liquor store robbery. The record does not indicate that they (or any other Tennessee authorities) took any steps to secure Appellant's return for trial other than to cause a detainer to be lodged against him on March 23d.

Appellant was convicted on the Illinois charge later in 1960 and sentenced to twenty years imprisonment. On June 3, 1968 he was paroled and returned to Memphis. There, on June 11, 1968, some eight years and three months after charges were first filed against him, Appellant was indicted for the liquor store robbery. Counsel was then, for the first time, appointed to assist Appellant. Some six months later, on January 13, 1969, Appellant was tried and convicted and sentenced to a 5–10 year term in the Tennessee State Penitentiary, where he is presently incarcerated.

Before trial, Appellant moved to quash the indictment on the grounds that his right to a speedy trial had been violated; the motion was denied. Appellant pressed his speedy trial claim on appeal, but it was rejected by the Tennessee Court of Criminal Appeals. Edmaiston v. State, 452 S.W.2d 677 (1970). He then petitioned for a writ of habeas corpus in the United States District Court. The District Court granted Appellant an evidentiary hearing on his petition, but found that Appellant had waived his rights by failing to demand a speedy trial; it also found that Appellant had failed to establish that he was prejudiced by the delay. Basing its ruling on these findings the District Court refused to issue the writ.

Appellant urges that the failure to bring him to trial at an early date denied him the testimony of two alibi witnesses, a Mr. and Mrs. John Albright, who died in a 1965 auto accident. He contends that in 1961 and 1962, prior to the deaths of the Albrights, he demanded a speedy trial by letter addressed to the Circuit Court of Shelby County and to the State Attorney General. He also alleges that a more formal request was made by petition in 1966—after the deaths of the witnesses.

While the Tennessee trial court found that Appellant had made several requests for a speedy trial and the Court of Criminal Appeals agreed, the District Court was not persuaded. This apparent reversal of the State court on a finding which was *favorable* to Appellant raises interesting questions under 28 U.S.C. § 2254. Our treatment of the demand issue makes it unnecessary to reach that question, however.

I.

We first consider the threshold problem posed by the fact that the bulk of the delay complained of occurred after arrest, but before indictment. At least one Circuit has held that the speedy trial protection does not apply at all in such circumstances. Reece v. United States, 337 F.2d 852, 853 (5th Cir. 1964); United States v. Williams, 416 F.2d 4, 9 (5th Cir. 1969), cert. denied 397 U.S. 968, 90 S.Ct. 1008, 25 L.Ed.2d 262 (1970). We do not agree with that conclusion.

Several cases in this Circuit have held that the statute of limitations rather than the speedy trial clause governs pre-indictment delay in general. United States v. Harris, 412 F.2d 471, 473 (6th Cir. 1969); Hoopengarner v. United States, 270 F.2d 465 (6th Cir. 1959; Lothridge v. United States, 441 F.2d 919 (6th Cir. 1971). Only one of these cases dealt with a situation in which post-arrest, pre-indictment delay was complained of, however. In *Lothridge* (*supra*) a ten-month delay between the commission of the crime and indictment was held not to be governed by the Sixth Amendment. More than half of that delay was attributable to the period before charges were filed or an arrest was made, however and so the question of whether substantial post-arrest delay could give rise to a speedy trial violation was not reached. *See Lothridge, supra,* 441 F.2d at 922 fn. 3.

The great weight of authority supports the view that in the present situation "the right (to speedy trial protection) attaches upon arrest." Dickey v. Florida, 398 U.S. 30, 43, 90 S.Ct. 1564, 1572, 26 L.Ed.2d 26 (1970) Brennan, J. concurring;[1] Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959); Hardy v. United States, 119 U.S.App.D.C. 364, 343 F.2d 233, 234 (D.C.Cir. 1964) cert. denied, 380 U.S. 984, 85 S.Ct. 1353, 14 L.Ed.2d 276; United States v. Sanchez, 361 F.2d 824, 825 (2d Cir. 1966); United States v. Colitto, 319 F.Supp. 1077 (E.D.N.Y. 1970).

These decisions, holding that speedy trial protection applies whenever an individual is charged with a crime, whether at the time of arrest or indictment, would seem to be consistent with the purposes which the Supreme Court has said underlie the Sixth Amendment. In United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), the Speedy Trial Clause was held to serve three major purposes. It prevents "undue and oppressive incarceration prior to trial," limits so far as possible the "anxiety and concern accompanying public accusation," and prevents the "impair(ment)" of the accused's "ability to defend himself" which would flow from a "long delay." 383 U.S. at 120, 86 S.Ct. at 776. The loss of concurrent sentencing possibilities or the limitations on parole terms which may flow from the filing of a detainer even in the absence of an indictment can certainly be included within the types of "oppressive incarceration" the Supreme Court alluded to in *Ewell*. *See* Smith v. Hooey, 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Similarly it is evident that "anxiety and concern" accompany any formal accusation—whether made through indictment or merely by arrest. Perhaps most importantly "long delay will impair the ability of an accused to defend himself" whether that delay occurs between arrest and indictment or after indictment.

While recognizing the applicability of some of these concerns even in the absence of both indictment and arrest this Circuit nevertheless has felt that the need for confidential pre-accusation investigation usually requires that speedy trial rights not attach until indictment.

---

1. Although the explicit statement that speedy trial protection attaches upon arrest is taken from Justice Brennan's concurring opinion in *Dickey* it should be noted that the delay relied upon to reverse the state conviction in *Dickey,* was of a post-arrest, pre-indictment nature. *See* 398 U.S. 30 at 34, 90 S.Ct. 1564, 26 L.Ed.2d 26. At least inferentially the Supreme Court unanimously accepted the idea that the speedy trial protection could attach before either an indictment or information existed where an arrest warrant had been issued and a detainer filed.

In *Dickey,* as here, the Statute of Limitations could afford Appellant no protection against delay because the statute was tolled by the issuance of an arrest warrant. Failure to make the speedy trial clause applicable to Dickey's situation would have allowed the State unlimited delay in trial so long as it did not obtain an indictment. A similar result would follow here if we did not hold that Appellant was protected by the Sixth Amendment, as well as the Statute of Limitations.

*See* United States v. Harris, *supra*, 412 F.2d 471. The feasibility of such secret evidence gathering, however, disappears in most cases once *either* arrest *or* indictment has taken place and an accused is acquainted with the general nature of the charges against him.

 For these reasons we believe that allowing the speedy trial protection to attach upon arrest when arrest occurs before indictment is consistent with the purposes supporting the Sixth Amendment and places no undue burden upon prosecuting or law enforcement authorities.[2] Whether or not the protection has been abridged, of course depends on the specific facts of each case.

## II.

Having determined that the speedy trial protection is available against post-arrest, pre-indictment delay we now turn to consideration of whether Appellant's rights were violated under the circumstances of this case.

In a series of rulings between 1967 and 1970 the Supreme Court greatly expanded the law applicable to persons in Appellant's situation. First the Court made speedy trial protection directly applicable in state proceedings. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); then, in 1969, it required states to use "due diligence" in securing the speedy return for trial of prisoners held in other states. Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Finally, in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), it held that the failure to use such diligence, at least when coupled with some evidence of prejudice, justified the voiding of a conviction obtained after the delay.

Appellant's conviction was entered on January 13, 1969; the Smith v. Hooey decision was not announced until January 20, 1969 and the Dickey v. Florida decision, May 25, 1970. The Tennessee Court of Criminal Appeals, reviewing Appellant's conviction after *Smith*, but before *Dickey* had been announced, held that under these circumstances *Smith* did not control its decision. Edmaiston v. State, Tenn., 452 S.W.2d 677, 680 (1970). It held that it was free to follow pre-existing Tennessee law which placed no responsibility on the State to secure the return of out of state prisoners for trial. *See* Burton v. State, 214 Tenn. 9, 377 S.W.2d 900 (1964). It was the State Court's conclusion that Appellant's rights to a speedy trial had not been violated because no rights accrued until he was released from the Illinois prison.

 We believe that Smith v. Hooey (and Dickey v. Florida) should be applied retroactively and therefore that Tennessee's failure to use due diligence in attempting to bring Appellant to trial promptly could constitute a deprivation of his speedy trial rights despite his Illinois incarceration.

Since Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), was announced only three factors have been held to be at all relevant in determining whether or not a new constitutional rule should be given retrospective application. Of these, only one, the purpose to be served by the new standard, has been of primary significance.[3]

"Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth finding

2. Throughout this discussion we have treated the formal charging of Appellant, issuance of the arrest warrant, the incarceration in Illinois and the filing of a detainer as constituting an "arrest."

3. There are two other elements: (1) the extent of the past reliance by law enforcement authorities on the old rule and (2) the effect on the administration

of justice of a retroactive application of the new rule. *See Linkletter, supra* and Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). As Mr. Justice White points out, however, (see text quoted) neither of these considerations has proved significant where the guilt determinative mechanism was found to be faulty and a correction devised.

function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good faith reliance by state or federal authorities on prior constitutional law or accepted practice nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." White, J. for the plurality in Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971).

There can be no doubt that the primary purpose of the rule in Smith v. Hooey and in Dickey v. Florida (*supra*) was to protect "the ability of an accused to defend himself." (*Smith*, 393 U.S. at 379, 89 S.Ct. at 578). In explaining its decision in *Smith* the Supreme Court noted: "Evidence and witnesses disappear, memories fade and events lose their perspective" and "a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time." *Id.* at 380, 89 S.Ct. at 578. The Court's language indicated a fear that the reliability of the guilt determining process was being adversely affected by the delays present in *Smith*, *Dickey* and evident here as well. Under the circumstances, retroactivity for the *Smith* and *Dickey* decisions would seem appropriate.

This conclusion destroys any basis for the State's claim that the reason for its delay in bringing Appellant to trial was a permissible one.[4]

### III.

While no explicit statement of all the factors relevant to the consideration of a speedy trial claim has appeared in this Circuit it is evident that in establishing the lack of justification for his tardy trial and the extreme length of the delay—eight and one-half years—Appellant has offered substantial evidence that his speedy trial rights were violated. It is generally accepted in this Circuit, however, that to justify the voiding of a conviction on speedy trial grounds actual prejudice to the Appellant must also be shown. Barker v. Wingo, 442 F.2d 1141, 1143–1144 (6th Cir. 1971); Fouts v. United States, 253 F.2d 215 (6th Cir. 1958), cert. denied, 358 U.S. 884, 79 S.Ct. 118, 3 L.Ed.2d 113 (1958).

Appellant has fulfilled that obligation. He asserts that he was prejudiced by the death of two potential alibi witnesses in 1965—some five years after he was first charged with the crime in question. He claims also that he lost the possibility for concurrent sentencing which might have been available to him had his Tennessee trial been held soon after the Illinois one.

The Supreme Court has specifically declared that a desire to "limit the possibilities that long delay will impair the ability of an accused to defend himself" is one of the principal rationales for the Sixth Amendment's speedy trial provision. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966). In explaining the types of

---

4. Since Klopfer v. North Carolina was decided more than 15 months before Appellant's indictment and 22 months before his Tennessee conviction we need not consider the retroactivity of that decision applying the speedy trial protection of the Sixth Amendment to the states. Even assuming the delay can be traced only to March, 1967 when *Klopfer* was announced and the State was placed on notice as to its obligations under the Sixth Amendment, the delay preceding Appellant's trial was of an impermissible length.

Even without affording *Klopfer* retroactivity the full eight and one-half year

delay would be taken into account, of course, if we chose to follow Mr. Justice Harlan's suggestion in *Dickey* and apply the rule enunciated in that case as an interpretation of the due process clause. See Hoskins v. Wainwright, 440 F.2d 69, 72 n. 2 (5th Cir. 1971); *cf.* Lassiter v. Turner, 423 F.2d 897, 902–904 (4th Cir. 1970) cert. denied 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1971), where *Klopfer* was applied retroactively.

Circumstances of this case do not require us to decide the retroactivity of *Klopfer* or the appropriateness of viewing *Smith* and *Dickey* as due process decisions.

impairment which might result from failure to bring a prisoner to trial promptly the Supreme Court specifically alluded to the possibility of defense witnesses being lost. *See* Smith v. Hooey, *supra,* 393 U.S. at 379–380, 89 S.Ct. 575. In *Dickey,* of course, the death of alleged alibi witnesses was a principal factor in the Court's conclusion that "abundant evidence of actual prejudice to petitioner" had been shown. 398 U.S. 30, 38, 90 S.Ct. 1564, 1569. Appellant has named specific witnesses whose testimony was lost to him through delay; his own memory was understandably vague with regard to events occurring eight and one-half years before trial. It cannot be disputed that Appellant's ability to prepare his defense was impaired.

The Supreme Court has also considered the loss of concurrent sentencing possibilities to be a significant incident of prejudice resulting from delay. *See* Smith v. Hooey, *supra,* 393 U.S. at 378, 89 S.Ct. 575. The possibility of such sentencing would have been open to Appellant had his Tennessee trial followed the Illinois proceeding with reasonable promptness.

We believe that Appellant has demonstrated that he was prejudiced by the delay in question.

## IV.

The District Court found that the speedy trial protection could not be invoked by Appellant because he had failed to "press for an early confrontation with his accusors and with the State." Dickey v. Florida, 398 U.S. 30, 38, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970). In so doing the District Court held Appellant had "waived" his right to assert his speedy trial claim. Assuming for purposes of this opinion the correctness of the District Court's determination that no demand was in fact made [5] we believe that Appellant's failure to make such a demand did not, under the circumstances of this case, waive his rights under the Sixth Amendment.

It is the general rule in this Circuit that demand for a speedy trial must be made at the time of or soon after any delay or else the right to object to that delay will be waived. Short v. Cardwell, 444 F.2d 1368 (6th Cir. 1971); Barker v. Wingo, 442 F.2d 1141 (6th Cir. 1971); Fouts v. United States, 253 F.2d 215 (6th Cir. 1958), cert. denied 358 U.S. 884, 79 S.Ct. 118, 3 L.Ed.2d 113 (1958); Carter v. State of Tennessee, 18 F.2d 850 (6th Cir. 1927).[6] This waiver has been specifically held to apply to persons imprisoned on one charge who fail to press for trial on a charge pending in another jurisdiction. Short v. Cardwell, *supra.*

This case differs significantly from *Short,* however. Short failed to make a demand even though an indictment had been filed against him soon after the commission of the crime. Here no indictment was filed against Edmaiston until after his release from the Illinois penitentiary—some eight years after the Tennessee liquor store robbery took place.

We believe that the absence of an indictment sufficiently distinguishes this case from Short v. Cardwell, *supra,* so as to make the demand rule inapplicable here.

Even in applying the strictest demand rule the federal courts have recognized situations where waiver should not properly be inferred from failure to demand

5. There is some doubt on this point. *Supra.*

6. The leading case suggesting the necessity for demand is the oft-quoted United States v. Lustman, 258 F.2d 475 (2d Cir. 1958) cert. denied 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). A few states as well as several lower federal courts have recently rejected the demand doctrine as out of step with the broadening of speedy trial rights. *See* United States v. Mann, 291 F.Supp. 268 (S.D.N.Y. 1968); United States v. Richardson, 291 F.Supp. 441 (S.D.N.Y.1968); Hicks v. People, 148 Colo. 26, 364 P.2d 877 (1961). *Cf.* Brennan, J., concurring in Dickey v. Florida, 398 U.S. 30, 49–50, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970).

a speedy trial.[7] One of the leading decisions in this area is our own Fouts v. United States, *supra*, 253 F.2d 215, where it was held that a defendant "unaware that he is under indictment cannot be held to have waived his right." *Id.* at 218. A similar conclusion was reached by the District of Columbia Circuit in Taylor v. United States, 98 U.S.App.D.C. 183, 238 F.2d 259, 261 (1956). *Cf.* Pitts v. State of North Carolina, 395 F.2d 182 (4th Cir. 1968).

Each of these cases turned on the fact that under all the circumstances the defendant could not have been expected to know that demand was appropriate. In addition to the lack of knowledge of any indictment there was other evidence suggesting that the defendant knew little if anything of the nature of the charges being brought against him. In *Fouts* for example there is no indication that the defendant had any idea that any charges were pending against him; in *Pitts* it appears that the only positive knowledge of pending charges was obtained through an informal conference with prison officials on another matter. Implicitly or explicitly the courts were basing their decisions in these cases on the oft-quoted rule that a waiver of fundamental right must be "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); Miranda v. State of Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The decisions did not reach the question of whether a defendant adequately informed of the charges against him could avoid the demand requirement simply because of the absence of the indictment per se.[8]

We believe that in the absence of an indictment no amount of information communicated to a potential defendant can require him to demand his speedy indictment or waive the protection against delay given by the Sixth Amendment. An explanation of this conclusion requires an examination of the reasons underlying the general demand rule and a comparison of those considerations with the realities of Appellant's position before indictment.

The rule has been designed to deal with two problems associated with the assertion of speedy trial rights. One is the danger of releasing factually guilty persons who have contributed to an impermissible delay by their acquiescence in prosecution sought delays or by engaging in dilatory tactics of their own. By requiring an accused to go on record with his request for prompt trial the courts have hoped to avoid unnecessary disputes as to whether or not there was acquiescence or whether a particular delay resulted from a maneuver by prosecution or defense. A second and related reason for the demand rule has been the courts' unwillingness to allow a defendant to remain silent and reap what are seen to be the benefits of delay and then later to be allowed to claim the speedy trial protection. Among the "benefits" which a defendant is seen to receive from delay are: additional time free on bail before trial; the disappearance of prosecution witnesses; a change in the prosecutor's decision to go ahead with the matter. *See* United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 623 (2d Cir. 1963); Barker v. Wingo, 442

---

7. See Note, "The Right to a Speedy Trial," 57 Colum.Law Rev. 846, 854–55 (1957).

8. Such distinction may, however, be inherent in another Fourth Circuit speedy trial case. In United States v. Banks, 370 F.2d 141 (4th Cir. 1966) cert. denied 386 U.S. 997, 87 S.Ct. 1317, 18 L.Ed.2d 345 (1967), the Court said:
 "The right [to a speedy trial] of course, may be waived, but there is no basis for a claim of waiver here. During the ten month period Banks did not demand a speedy trial, but he knew only of the arrest warrant and was uninformed that he had been indicted." 370 F.2d at 145, fn. 4
 It can be urged that such language contemplates defendant's full awareness of the charges against him, but rejects the applicability of the demand doctrine in a pre-indictment situation.

F.2d 1141 (6th Cir. 1971); United States v. Maxwell, 383 F.2d 437, 441 (2d Cir. 1967) cert. denied 389 U.S. 1043, 88 S.Ct. 786, 19 L.Ed.2d 835 (1967); *Cf.* Note, "The Right to a Speedy Trial," 20 Stanford Law. Rev. 476, 479 (1968).

The assumptions which give life to these rationales have been under increasing attack recently (*see* cases cited at n. 6). While these assaults on the established rule do present a well reasoned approach it is not necessary to agree with them as regards the demand rule as a whole to conclude that the rationales for the general demand rule have little relevance to the present situation.

■ Appellant did not contribute in any way to the delay. The State was firmly convinced that it had no obligation to try Appellant and no demand could have led to a speedier trial.[9] *See* Edmaiston v. State, 452 S.W.2d 677, 680–681 (Tenn.Ct. of Crim.App., 1970). Demand has never been required where any request would have proven futile. United States v. Provoo, 17 F.R.D. 183 (D. Md.) aff'd mem. 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). Thus the first rationale for the demand requirement is inapplicable here.

So too is the second. Appellant gained no advantage from delay here nor is it likely that he could have. He gained no additional period of freedom by failing to press for speedy trial; he was imprisoned at all times. He could not expect the prosecution to reverse itself and decide not to prosecute on the indictment; no indictment had ever been filed during his prison stay.

While Tennessee's refusal to grant out of state prisoners a trial in the pre-Smith v. Hooey period uniquely undercuts any demand rationale here, we believe that it is almost as clear that that rationale has little applicability to any prisoner serving one sentence and facing the possibility of trial on another charge for which he has not yet been indicted.

Few such prisoners can expect to receive any benefit from prolonged delay. They have neither their freedom to retain nor any expectation that they can dissuade a prosecutor from proceeding if such is his determination. The likelihood of losing witnesses falls more heavily on a prisoner unable to maintain significant contacts with the outside world than on a prosecutor with the power and resources of the state at his disposal. Meanwhile the delay may cost the prisoner concurrent sentencing possibilities, limit parole opportunities and hamper his preparation for trial. There is little reason for a prisoner in Appellant's position to seek delay. Neither does such prisoner have any substantial opportunity to hinder a speedy prosecution in the pre-indictment stage. The only rationale for the demand rule which can possibly be applicable to such a prisoner in general is the desire that defendants be required to remind the prosecutor of delays so that unnecessary ones may be avoided. Whatever the merits of this requirement in the post-indictment situation they are noticeably lacking in the pre-indictment stage.

It is one thing to require a defendant formally accused by the community through an indictment to choose either the benefits of silent acquiescence in delay or the possibility of prompt vindication through the assertion of his speedy trial rights. It is quite another to expect a man, not yet indicted and by no means certain that he ever will be indicted, to seek very thing he justly fears—the return of a true bill by the Grand Jury. *See* United States v. Colitto, 319 F.Supp. 1077, 1082–1083 (E.D. N.Y.1970).

The demand rule already reflects a rather peculiar view of the relative responsibilities for bringing on a trial; to hold that an individual must not only see to it that his trial is timely held, but that the preliminary stages of his prosecution are also undertaken with ap-

---

9. This view was based on a line of Tennessee cases holding that the State had no responsibility for bringing to trial those persons whose presence it could not compel, e. g. out of state prisoners. See Section II of this opinion.

propriate dispatch upon penalty of forfeiting a "fundamental right" is to impose a heavy burden indeed on a presumptively innocent individual. We do not believe that such a burden is contemplated by the Sixth Amendment.

### V.

■ Finding that a long and prejudicial delay occurred in this case, that the delay cannot be justified under applicable constitutional standards and that Appellant did not waive his right to assert his speedy trial claim, we hold that he was denied the protection against delay afforded him by the Sixth Amendment. We reverse and remand to the District Court with instructions to grant the writ.

WEICK, Circuit Judge (dissenting).

In my opinion the speedy trial safeguard of the Sixth Amendment applies only to delay occurring after the defendant has been charged with the commission of an offense. In the present case only a warrant for his arrest had been issued in Tennessee. He had not been arrested; rather, only a detainer was filed with authorities in Illinois. It is questionable here whether a demand for trial was ever made to the proper authority. See Short v. Cardwell, 444 F.2d 1368 (6th Cir. 1971).

Delay in filing an indictment is governed by the applicable statute of limitations. This has been the established law of the Sixth Circuit for many years. Lothridge v. United States, 441 F.2d 919 (6th Cir. 1971); United States v. Harris, 412 F.2d 471 (6th Cir. 1969); Hoopengarner v. United States, 270 F.2d 465, 469 (6th Cir. 1959); Parker v. United States, 252 F.2d 680 (6th Cir.), cert. denied, 356 U.S. 964, 78 S.Ct. 1003, 2 L.Ed.2d 1071 (1958). Accord: Reece v. United States, 337 F.2d 852 (5th Cir. 1964); Harlow v. United States, 301 F.2d 361 (5th Cir.), cert. denied, 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56 (1962); Foley v. United States, 290 F.2d 562 (8th Cir. 1961); D'Aquino v. United States, 192 F.2d 338 (9th Cir. 1951),

cert. denied, 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343 (1952). See also United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (Decided December 20, 1971).

I would affirm for the reasons stated by Chief Judge Bailey Brown in his Memorandum Decision and Order Denying Petition and Dismissing Action, 334 F.Supp. 1316.